IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

```
_____
                               )
UNITED STATES OF AMERICA,       )
                               )
        Plaintiff,              )
                               )
vs.                             )   Case No.:  3:17-CR-82
                               )
HEATHER ANN TUCCI-JARRAF,       )
                               )
        Defendant.              )
_____)
```

**PROCEEDINGS**
**BEFORE THE HONORABLE C. CLIFFORD SHIRLEY, JR.**

**August 29, 2017**
**10:47 a.m. to 12:50 p.m.**

**APPEARANCES:**

**FOR THE PLAINTIFF:**      CYNTHIA F. DAVIDSON, ESQUIRE
ANNE-MARIE SVOLTO, ESQUIRE
Assistant United States Attorney
United States Department of Justice
Office of the United States Attorney
800 Market Street
Suite 211
Knoxville, Tennessee 37902

**FOR THE DEFENDANT:**     FRANCIS L. LLOYD, JR., ESQUIRE
Law Office of Francis L. Lloyd, Jr.
9111 Cross Park Drive
Suite D-200
Knoxville, Tennessee 37923

**REPORTED BY:**

Rebekah M. Lockwood, RPR, CRR
Official Court Reporter
(865) 210-6698
800 Market Street, Suite 130
Knoxville, Tennessee 37902

**INDEX**

PAGE

Proceedings                                           3

MARIE WASILIK
Direct Examination by Ms. Tucci-Jarraf             41
Cross-Examination by Ms. Davidson                  45
Redirect Examination by Ms. Tucci-Jarraf           46

Proceedings                                          47

Rebekah M. Lockwood, RPR, CRR
Official Court Reporter
(865) 210-6698
800 Market Street, Suite 130
Knoxville, Tennessee 37902

1          (Call to Order of the Court)

2               THE COURTROOM DEPUTY:  All rise.  All rise.  This court

3     is again in session with the Honorable C. Clifford Shirley, Jr.,

4     United States Magistrate Judge, presiding.

5               Please come to order and be seated.

6               We are here for a detention hearing, status conference,

7     and motion hearing in case number 3:17-CR-82, United States of

8     America versus Heather Tucci-Jarraf.

9               Here on behalf of the government is Cynthia Davidson

10    and Anne-Marie Svolto.  Is the government ready to proceed?

11              MS. DAVIDSON:  Yes, Your Honor.

12              THE COURT:  And here on behalf of the defendant is

13    Francis Lloyd, Jr.  Is the defendant ready to proceed?

14              MR. LLOYD:  The defendant is ready -- present and

15    ready, Your Honor.

16              As to the status of my relationship to the defendant, I

17    believe that at the hearing this past Thursday, Magistrate Judge

18    Guyton left that to be decided by Your Honor.

19              THE COURT:  All right.  Fine.  We will take that up

20    first then.

21              Ms. Davidson, good morning.

22              MS. DAVIDSON:  Good morning, Your Honor.

23              THE COURT:  Mr. Lloyd, good morning.

24              MR. LLOYD:  Good morning, Your Honor.

25              THE COURT:  Is it Ms. Tucci-Jarraf?  Have I said it

1    close?  I would like to address you as close to proper as I can

2    do.

3            THE DEFENDANT:  Without prejudice, yes, my name is

4    Heather Ann Tucci-Jarraf.

5            THE COURT:  Tucci-Jarraf.  Okay.  Thank you.  I'll try

6    to get that correct.  And I'll apologize in advance if I don't.

7    Good morning to you.

8            Good morning to those in the audience.  Let me remind

9    those in the audience, this is a public court, and it's a public

10   hearing, and we're glad to have you, and we welcome you to

11   Federal Court in the Eastern District of Tennessee.

12           There's a couple rules that all of you need to be aware

13   of, and it's because we obviously have to maintain order in the

14   courtroom, and that's for the benefit of all the participants,

15   and it's very simply you're just not to be disruptive.  No

16   comments and anything like that.

17           If you become disruptive, then I'll obviously need to

18   remove the disruptive individual or individuals.  If it becomes

19   systemic, then I may have to consider closing the hearing.

20           So I don't anticipate any problem.  We often have some

21   relatively high-profile cases, and we have the courtroom filled

22   from time to time, and it's generally not a problem, as long as

23   people just sit back, take it all in, and listen.

24           Everybody is entitled to take any notes or anything

25   like that if you want to, but the local rules do prohibit any

1    audio or video recordings.  So there's -- no one's allowed to

2    record anything audio -- audibly or by video.  No cameras are

3    allowed.  And if you do that, you will be subject to not only

4    being removed, but possibly sanctioned or charged for violating

5    the rules.

6         Does anybody have any audio or video equipment on them

7    at this time, whether it's being used or not?

8         Does anybody have any electronic devices?

9         MR. LLOYD:  Your Honor, I have my telephone, which I --

10        THE COURT:  You know the rules, Mr. Lloyd.

11        MR. LLOYD:  Yes, Your Honor.

12        THE COURT:  Your continued attendance in this court

13   insists that you follow them, and I've never known you not to.

14        So all right.  Nobody has indicated that they have

15   that, so I will presume everybody understands it.  Anybody have

16   any questions about the -- kind of the ground rules?

17        All right.  Now, let's begin.  I think we should take

18   up the issue of the representation of Ms. Tucci-Jarraf.  And do

19   I understand that she wants to retain you, that she wants you to

20   be appointed, or that she wants to represent herself?

21        MR. LLOYD:  Your Honor, I have informed --

22        THE COURT:  Can you speak -- come on up and speak into

23   the microphone here.  We have a court reporter, and I want to be

24   sure she gets everything down properly.

25        MR. LLOYD:  Thank you, Your Honor.

                    UNITED STATES DISTRICT COURT

1          THE COURT:  Uh-huh.

2          MR. LLOYD:  I have explained to the defendant that in

3     my view of the ethical obligations of someone called to a case

4     under the Criminal Justice Act, I cannot accept being retained.

5     I think that --

6          THE COURT:  I don't think that's true.

7          MR. LLOYD:  Well, I would -- I'm concerned, Your Honor,

8     that it violates the spirit of the act, if not the letter of it.

9     The defendant would like to apply for appointed elbow or standby

10    counsel.  And I'll -- I would ask the Court to hear

11    Ms. Tucci-Jarraf on that subject.

12         THE COURT:  All right.  She wishes to represent

13    herself?

14         THE DEFENDANT:  Actually, if I might address that, Your

15    Honor.

16         THE COURT:  Just one second.

17         Is that your understanding, that she wishes to

18    represent herself?

19         MR. LLOYD:  My understanding is that she wishes to

20    have -- to have me appointed under the Criminal Justice Act, but

21    as the attorney to consult with her in presenting her desired

22    defense.

23         THE COURT:  Well, you understand how that works.  That

24    means she represents herself, and you are available to assist

25    her with more administrative or ministerial-type acts, like

                    UNITED STATES DISTRICT COURT

1   assist her with filing or things of that nature, provide her if

2   she wants copies of cases or things like that, if she can't get

3   them, but --

4           MR. LLOYD:  And that --

5           THE COURT:  -- she's -- she is representing herself.

6   You do not speak for her.  You will not represent her in court,

7   but you can sit beside her and assist her.

8           MR. LLOYD:  As was done in one of the --

9           THE COURT:  We've done it a half dozen times or more --

10          MR. LLOYD:  Yes, sir.

11          THE COURT:  -- in the last few years.

12          MR. LLOYD:  One out of Oak Ridge was --

13          THE COURT:  Right.

14          MR. LLOYD:  -- one of my colleagues served in that

15  capacity.

16          THE COURT:  Correct.

17          MR. LLOYD:  But I would ask the Court to hear the

18  defendant so as to -- there's a clear understanding of her

19  desire.

20          THE COURT:  Oh, I'm going to do that.  I'm going to do

21  that, because, obviously, I have to go through a litany with her

22  to ensure that.

23          All right.  Thank you, Mr. Lloyd.

24          MR. LLOYD:  Yes, Your Honor.

25          THE COURT:  So, Ms. Tucci-Jarraf, is it correct that

1   you would like to represent yourself, number one, and, number

2   two, you would like for me to also appoint Mr. Lloyd to act as

3   what we call elbow counsel or standby counsel?

4        THE DEFENDANT: Do you want me to answer from here or

5   from the podium?

6        THE COURT: I think from there. If you'll just pull

7   the microphone up, I think we can hear you fine. Mr. Lloyd just

8   wasn't speaking up loud enough and didn't have his own

9   microphone. Go ahead.

10       THE DEFENDANT: Okay. I am -- I'm here as myself.

11       THE COURT: I didn't ask that question.

12       THE DEFENDANT: No, I know. You're asking if I'm

13   representing myself.

14       THE COURT: We're all here as ourself.

15       THE DEFENDANT: I'm not representing myself. I'm here

16   as myself. I am myself. And I will --

17       THE COURT: I think I am myself too.

18       THE DEFENDANT: Correct. I am.

19       THE COURT: All right.

20       THE DEFENDANT: And this is without prejudice to the

21   matter for jurisdiction, which we haven't gone over yet.

22       THE COURT: Correct. I'm going to allow you to file

23   any motions you want on jurisdiction. And we'll -- I've got a

24   good organization here, so I think if you stick with me and just

25   let us do this, if there's anything I miss at the end --

1              THE DEFENDANT:  No, that's fine.

2              THE COURT:  -- you can go on about that.

3              THE DEFENDANT:  I'm -- your answer was if I'm going to

4    represent myself.

5              THE COURT:  Yeah.

6              THE DEFENDANT:  To represent myself pro se is a

7    completely different legal status than pro per or propria

8    persona, as well as just --

9              THE COURT:  No, it's not.  You're wrong.  It's just not

10   the law.  You either represent yourself or you don't.

11             THE DEFENDANT:  Without prejudice, I am myself, and I

12   am going to be presenting before this Court and on behalf of my

13   case.

14             THE COURT:  Do you want to represent yourself?

15             THE DEFENDANT:  Yes.

16             THE COURT:  Okay.  And the Sixth --

17             THE DEFENDANT:  Without prejudice, yes.

18             THE COURT:  All right.  Sixth Amendment provides that a

19   criminal defendant has the right to assistance of counsel, but

20   it also provides that you can proceed without counsel, which

21   you're offering to do in this case, if the court finds that you

22   have voluntarily and intelligently elected to do so.

23             Okay.  In other words, you have a right to counsel and

24   you have a right to waive counsel.  You have your choice.

25   Either one.

1      THE DEFENDANT:  Right.  And this is why I wanted to

2  handle jurisdiction first.  Because depending on the

3  jurisdiction, where -- we are operating on two different

4  jurisdictions here.  So I am going to, without prejudice, going

5  to state that I will be presenting -- and I am myself -- I'll be

6  presenting all cases.  I do not want counsel.

7      THE COURT:  Okay.

8      THE DEFENDANT:  But I do -- would like Mr. Lloyd to act

9  as elbow counsel or what we call in the west coast standby

10  counsel.

11      THE COURT:  Okay.  Yeah.  Either one.  We use them --

12      THE DEFENDANT:  Interchangeably.

13      THE COURT:  -- interchangeably here.

14      THE DEFENDANT:  Okay.

15      THE COURT:  All right.  So I have to determine that

16  your decision to represent yourself and to waive counsel is

17  being made knowingly and is being made voluntarily and that you

18  understand what we refer to as all the dangers and disadvantages

19  that that provides.

20      So let me start with a few questions.  Have you ever

21  studied law?

22      THE DEFENDANT:  I have.

23      THE COURT:  All right.  And in what capacity?

24      THE DEFENDANT:  I have a juris doctorate.

25      THE COURT:  All right.  And have you practiced law?

1          THE DEFENDANT:  I did practice.  I've been a lawyer for

2   17 years, and I was a barred attorney for 11.

3          THE COURT:  Okay.  Barred has two terms.  One is to be

4   a member of the bar and the other is to be barred from being

5   member of a bar.

6          THE DEFENDANT:  A member of the bar.

7          THE COURT:  All right.  And are you still practicing?

8          THE DEFENDANT:  No, sir.

9          THE COURT:  Okay.

10          THE DEFENDANT:  I canceled that license in -- on

11   March 24th, 2011.

12          THE COURT:  All right.  Have you ever represented

13   yourself as a defendant in a criminal action?

14          THE DEFENDANT:  I did in Washington state regarding

15   a -- when I was doing the mortgage fraud investigations.  There

16   was a -- an incident with the sheriffs that I was advising and

17   consulting on the mortgage --

18          THE COURT:  I don't need all the details.

19          THE DEFENDANT:  True.  But it was an obstruction, and

20   so it was a criminal case that was unforeseen, and I did proceed

21   to -- as myself presenting myself.

22          THE COURT:  All right.  So you were charged in the

23   state of Washington --

24          THE DEFENDANT:  Right.

25          THE COURT:  -- with something?

1          THE DEFENDANT:  It was --

2          THE COURT:  I don't need the -- I don't need the

3     details.

4          THE DEFENDANT:  It's on NCIC, but it was obstruction,

5     but it was a deferred prosecution.

6          THE COURT:  All right.  And I'm going to --

7          THE DEFENDANT:  It was a misdemeanor in district court.

8          THE COURT:  I'm going to pause here just for a second.

9     I need to remind you of something probably Judge Guyton told

10    you, which is you have certain rights as a defendant, and one of

11    those is the right to remain silent and not say anything that

12    might incriminate you.

13         So I'm going to ask you questions very specific that in

14    my mind don't incriminate you, but I don't want you to go on and

15    on talking about other things that might incriminate you,

16    because I don't want you to hurt your case.  Okay.

17         THE DEFENDANT:  I'm aware.

18         MS. DAVIDSON:  Your Honor, I --

19         THE COURT:  Ms. Davidson.

20         MS. DAVIDSON:  I was just wondering, might it be

21    appropriate for the defendant to be sworn in, because she has

22    not as of yet been sworn in, and she was answering lots of

23    questions that you're asking of her.

24         THE COURT:  All right.  We'll do that.  The -- I need

25    to take up another matter that was sworn, I think before, but

                    UNITED STATES DISTRICT COURT

1    there may be some disagreement in light of Mr. Lloyd's filing.

2           So if you would, Ms. Tucci-Jarraf, if you'd raise your

3    right hand, please, ma'am.  Okay.

4           THE COURTROOM DEPUTY:  Do you solemnly swear or affirm

5    to tell the truth, the whole truth, and nothing but the truth,

6    so help you God?  If so, please say, "I do."

7           THE DEFENDANT:  I am source of all that is.

8           THE REPORTER:  I'm sorry.  I can't hear you.

9           THE DEFENDANT:  I am source of all that is.  I swear to

10   speak true, accurate, and complete.

11          THE COURT:  I don't know what that means.  I didn't ask

12   you what your source was.  We just asked you if you are going to

13   swear or if you're going to affirm that you will tell the truth.

14          THE DEFENDANT:  I just said I swear to speak true,

15   accurate, and complete.

16          THE COURT:  Is that different?

17          THE DEFENDANT:  Yes.

18          THE COURT:  What is it?  What's different about that

19   and telling the truth?

20          THE DEFENDANT:  Truth is a matter of perception,

21   whereas speaking true, accurate, and complete gives you a full

22   accurate record.

23          THE COURT:  But it's not necessarily the truth?

24          THE DEFENDANT:  It is the truth.  I only speak truth.

25   True, accurate, and complete.

                    UNITED STATES DISTRICT COURT

1          THE COURT:  Well, then I ask you, will you affirm to
2     tell the truth?
3          THE DEFENDANT:  I'm not trying to be difficult here.
4     I'm saying that I will speak only true --
5          THE COURT:  You are being difficult.
6          THE DEFENDANT:  -- and complete --
7          THE COURT:  You are being difficult, because I just
8     asked you will you tell the truth.
9          THE DEFENDANT:  I will speak truthfully.
10          THE COURT:  And is that different than telling the
11    truth?
12          THE DEFENDANT:  No, it's the same thing.
13          THE COURT:  Okay.
14          THE DEFENDANT:  The truth -- anyway.
15          THE COURT:  That's good.  Telling the truth and
16    speaking truthfully are the same thing.
17          THE DEFENDANT:  The other version means that there is
18    room for perception.  There's room for not speaking truth --
19    true, accurate, and complete.  I'm telling you I speak only
20    true, accurate, and complete.
21          THE COURT:  All right.  So when you told me you had a
22    JD.  Is that truthful?
23          THE DEFENDANT:  It is true and it is truthful.
24          THE COURT:  Okay.  And when you said you had canceled
25    your license and quit practicing in 2011, was that true?

1          THE DEFENDANT:  That is true and truthful.

2          THE COURT:  And when you said you represented yourself

3    in a criminal case in the state of Washington, was that true?

4          THE DEFENDANT:  That is true and truthful.

5          THE COURT:  All right.  And have you represented

6    anybody else in a criminal case?

7          THE DEFENDANT:  I used to be a prosecutor for the state

8    of Washington, so, yes, during my 11 years, I have defended as

9    well as prosecuted criminals.

10          THE COURT:  And how long were you a prosecutor?

11          THE DEFENDANT:  From -- well, I was a defender from --

12          THE COURT:  A defender or prosecutor?

13          THE DEFENDANT:  First I was a public defender.

14          THE COURT:  Okay.

15          THE DEFENDANT:  For about four months.  December --

16    excuse me, January -- approximately January of 2003 until May of

17    2003.  Then from May of 2003, I was a prosecutor until February

18    of 2006.

19          THE COURT:  All right.  Have you ever been involved in

20    any cases in federal court like this?

21          THE DEFENDANT:  No, I haven't.

22          THE COURT:  Or just state court?

23          THE DEFENDANT:  Just state court.

24          THE COURT:  You realize that you are charged in this

25    court with a crime referred to as money laundering.

1          THE DEFENDANT:  I am aware of the allegations made

2    by -- I'm sorry.

3          THE COURT:  In the indictment.

4          THE DEFENDANT:  Yeah.

5          THE COURT:  I just need to be sure you understand.

6          THE DEFENDANT:  I've read the allegations in the true

7    bill.

8          THE COURT:  Okay.  I'm not asking you to agree to them.

9    I'm just asking if you understand them.

10          Do you realize that if you're found guilty of that

11    crime, that you could face certain number of years?  How many

12    years in prison in this case?

13          MS. DAVIDSON:  Up to 20 years imprisonment.

14          THE COURT:  Up to 20 years in prison.  And what's the

15    fine?

16          MS. DAVIDSON:  It's 500,000 or twice the actual loss.

17          THE COURT:  Okay.  Do you understand that if you're

18    found guilty, you could receive up to either of those?

19          THE DEFENDANT:  As with this answer and the other

20    answers, with reservation to the matter of jurisdiction, to let

21    us handle, I am aware of what the U.S.A. is speaking of, yes,

22    the terms and the --

23          THE COURT:  All right.  You realize that if you're

24    found guilty of more than one of these crime -- but there's only

25    one charge, right, so there's no concerns about the consecutive

1    sentencing?

2            MS. DAVIDSON:  Yes.  As to Ms. Tucci-Jarraf, there is

3    only one charge, the conspiracy.

4            THE COURT:  All right.  You realize, Ms. Tucci-Jarraf,

5    that if you choose to represent yourself, as you're asking,

6    you're on your own.  And I mean by that, I can't tell you how to

7    try your case.  I can't give you any legal advice or any advice

8    on how to try the case.

9            Do you understand that?

10           THE DEFENDANT:  I am aware of those issues, yes.

11           THE COURT:  Okay.

12           THE DEFENDANT:  I'm aware of what you're stating, and I

13   get that I would be on my own.

14           THE COURT:  Is that different than understanding?

15           THE DEFENDANT:  Yes.  I am aware.  I am aware of

16   everything that you're speaking to and --

17           THE COURT:  But you don't understand it.  Because if

18   you don't understand it, I can't let you represent yourself.

19           THE DEFENDANT:  Okay.

20           THE COURT:  I mean, that's what the rule says, and it's

21   very simple.

22           THE DEFENDANT:  Yes.  And I get the implications, and I

23   understand the implications of the word "understand."  So I am

24   aware, and I'm agreeing that I'm going to be going forward and

25   doing my own case.

1           THE COURT:  Do you realize I can't tell you what to do

2    or how to do it?

3           THE DEFENDANT:  I'm -- I am aware of that and I agree

4    to that.

5           THE COURT:  Okay.  Are you familiar with the Federal

6    Rules of Evidence?

7           THE DEFENDANT:  It's been a while, so I'm going to have

8    to refresh myself on the Federal Rules of Evidence.

9           THE COURT:  I take it you realize that the Federal

10   Rules of Evidence will govern what evidence may or may not

11   actually be introduced at trial, and in representing yourself,

12   you have to abide by those rules.

13          THE DEFENDANT:  With reservation to the jurisdiction

14   issue that we still have to handle, yes, I am aware.

15          THE COURT:  Always going to have the jurisdiction

16   issue, so don't even raise it again.  I will always let you file

17   that motion as soon as we leave the court today.  But we're

18   going to play by the Federal Rules of Evidence with regard to

19   evidence that comes in this court.

20          Do you understand that?

21          THE DEFENDANT:  I'm aware of that and I agree to that.

22          THE COURT:  Pardon?

23          THE DEFENDANT:  I am aware of the Federal Rules of

24   Evidence that will govern this particular case, and I agree to

25   use those rules.

1              THE COURT:  All right.  And do you understand if you're

2    not familiar with them, that it can be a problem because you

3    might not get something in evidence?

4              THE DEFENDANT:  I am aware of that as well.

5              THE COURT:  All right.  Are you familiar with the

6    Federal Rules of Criminal Procedure?

7              THE DEFENDANT:  Again, it's been a while since I've had

8    to --

9              THE COURT:  Do you realize that the Rules of Criminal

10   Procedure govern the way that this Court will handle a criminal

11   action here in Federal Court?

12             THE DEFENDANT:  I'm aware that that's how this Court

13   proceeds and how they do all their matters, yes.

14             THE COURT:  Okay.  Do you understand that if you decide

15   to take the witness stand and decide to testify that you'll have

16   to present the testimony by generally asking questions of

17   yourself?

18             THE DEFENDANT:  I am aware of that and have experienced

19   that.

20             THE COURT:  All right.  So that there's a proper

21   procedure for objections and things like that.

22             You understand that?

23             THE DEFENDANT:  I'm aware of that, yes.

24             THE COURT:  All right.  It's imperative for me to

25   advise you that, in my opinion, that you would be far better off

                    UNITED STATES DISTRICT COURT

1    to be represented by a trained lawyer than you would be to

2    represent yourself.

3           I think it's unwise of you to try to represent yourself

4    in this type of a case where the stakes are high.  I don't

5    believe you are familiar with the Federal Rules as much as you

6    need to be.  I don't believe you're as familiar with court

7    procedure as you ought to be.  And I would strongly urge you not

8    to represent yourself.  That's just my opinion and my suggestion

9    to you.

10           But in light of that, and in light of the penalty you

11    might suffer if you're found guilty, and in light of all the

12    difficulties of representing yourself, is it still your desire

13    to represent yourself and give up the right to be represented by

14    an attorney instead?

15           THE DEFENDANT:  Again, I am aware of my capabilities.

16    I'm aware of my capacity to be able to take in new material or

17    to refresh myself in old material and my ability to be able to

18    present it as needs to be presented while conforming or

19    practicing the particular rules that you have set forth that are

20    going to govern these proceedings.

21           THE COURT:  Uh-huh.

22           THE DEFENDANT:  So I'm very comfortable with -- in

23    fact, I prefer it at this time.

24           THE COURT:  Fair enough.

25           THE DEFENDANT:  Again, with Mr. -- Mr. Lloyd's

1   assistance administerially [sic].

2           THE COURT:  Okay.  So it is still then your desire to

3   represent yourself and give up your right to be represented by

4   an attorney.

5           THE DEFENDANT:  It is my preference.  And it is my

6   choice that I'm going to implement to move forward as myself to

7   present as myself and to present this case by my own --

8           THE COURT:  Is it going to be that any descriptive word

9   I use you're going to pick another word?

10          THE DEFENDANT:  You know, after you get -- it's

11  really --

12          THE COURT:  Because I've tried so hard to be --

13          THE DEFENDANT:  I'm just trying to create the record

14  here.  That's all.  If there's any corrections, I can go ahead

15  and go back and file corrections to anything.

16          THE COURT:  I'm just figuring out if I say, "Is it your

17  desire to represent yourself" --

18          THE DEFENDANT:  It is my desire to move forward --

19          THE COURT:  I'm sorry.  I didn't mean to interrupt you.

20          THE DEFENDANT:  I'm sorry.  I'm answering questions.  I

21  desire to move forward, and I choose to move forward, and I

22  implement that choice now to move forward by myself as myself.

23          THE COURT:  And I'm going to let you.  I'm just trying

24  to figure out if I say, as I've said --

25          THE DEFENDANT:  Yeah.

                    UNITED STATES DISTRICT COURT

1          THE COURT:  -- to -- I'm sorry.

2          THE DEFENDANT:  Please.

3          THE COURT:  Can I finish?

4          THE DEFENDANT:  No, please.

5          THE COURT:  Thank you.  If I say to you, "Do you desire

6   to represent yourself," most everybody I've had before says,

7   "Yes."  You won't say yes because you want to change wording.

8   Okay.  And what I'm trying to figure out, you say, "I want to

9   make the record," does that mean that the record you're making

10  is of something other than a choice to represent yourself?

11  Because if it is, you need to tell me that now.

12         THE DEFENDANT:  No.  I -- Your Honor, my record is just

13  to establish that I am here, I am present, and I am moving

14  forward as myself.  Because of the legal standings, I agree

15  that -- excuse me, I acknowledge that you and I disagree as to

16  legal standings between pro se, pro per, sui juris, and all of

17  that.  I get that.

18         So I'm just explaining to you that I will be moving

19  forward as myself, not representing myself on behalf -- excuse

20  me, not representing on behalf of myself, but representing or

21  presenting as myself to the Court, speaking truthfully, true,

22  accurate, and complete.

23         So, yes, just to make it easy, yes.

24         THE COURT:  Yeah.  Yes.  You desire to represent

25  yourself.  Yes?

1          THE DEFENDANT:  Yes.  I'll go back and correct it

2     later.  Yes.

3          THE COURT:  And you give up your right to be

4     represented by an attorney?

5          THE DEFENDANT:  I know that you said not to bring this

6     up, but without prejudice of reservation of the jurisdiction, I

7     will -- which is why I didn't want to address the issue of pro

8     se, pro per, et cetera until after we had done jurisdiction.

9          THE COURT:  Okay.  Let's suppose I find jurisdiction --

10          THE DEFENDANT:  Okay.

11          THE COURT:  -- is appropriate here.

12          THE DEFENDANT:  Okay.  If -- whether you find it or you

13     don't, the point was, is that there is a difference between me

14     presenting on behalf of myself and me presenting as self, that I

15     am myself.  I'm not here on behalf of anyone.  I'm not an

16     attorney representing myself as an attorney.  I am one and the

17     same.  I'm just me.  And I'm going to be moving forward.

18          THE COURT:  Every human that comes into this court has

19     a right to represent themselves.  You have that same right as

20     every other person.  They don't have the right to represent

21     anybody else.

22          THE DEFENDANT:  Uh-huh.

23          THE COURT:  Only a lawyer can do that.  And only a

24     lawyer that's properly in this court can do that.  So the only

25     person you are representing is yourself.

1             THE DEFENDANT:  And that's just --

2             THE COURT:  That's all I'm asking you.

3             THE DEFENDANT:  And that is a matter of difference in

4    legal status.  And I'm just trying to say --

5             THE COURT:  It isn't.

6             THE DEFENDANT:  -- the correct legal status.

7             THE COURT:  That's legal --

8             THE DEFENDANT:  I know you disagree.

9             THE COURT:  That's just legal wrong.  It's just mumbo

10   jumbo.  It really isn't anything.

11            THE DEFENDANT:  Okay.

12            THE COURT:  Are you giving --

13            THE DEFENDANT:  To answer your question, yes, I will go

14   forward.

15            THE COURT:  All right.  And are you giving up your

16   right, waiving your right to be represented by a lawyer?  That's

17   a yes or no.

18            THE DEFENDANT:  Without prejudice, yes.

19            THE COURT:  Okay.  And is your decision completely

20   voluntary on your part?

21            THE DEFENDANT:  Without prejudice, yes.

22            THE COURT:  All right.  All right.  I am prepared to

23   find that the defendant has knowingly and voluntarily waived her

24   right to counsel, and I will permit her to represent herself.

25            Do you have any disagreement or objection to that

1    finding, Ms. Davidson?

2            MS. DAVIDSON:  No, Your Honor.

3            THE COURT:  Okay.  Any misstatement as far as you

4    understand, Mr. Lloyd?

5            MR. LLOYD:  No, Your Honor.

6            THE COURT:  All right.  Now, she has requested that I

7    appoint you as standby or elbow counsel to assist her in this

8    matter in that capacity.  Before I get to the qualifications on

9    that, would you be willing to be so appointed?

10           MR. LLOYD:  Yes, Your Honor.

11           THE COURT:  You understand the limited nature of that

12   appointment?

13           MR. LLOYD:  Yes, Your Honor.

14           THE COURT:  That you are only to assist her, but you

15   are always to assist her with regard to making a record, helping

16   her with filing, being a liaison on her behalf to the Court, but

17   you do not direct the case.  It's her case.

18           Do you understand that?

19           MR. LLOYD:  I understand that, Your Honor.

20           THE COURT:  All right.  You can provide her copies of

21   and advice on the rules and procedure, but it's still her

22   decision on how to try her case.

23           Do you understand that?

24           MR. LLOYD:  Yes, Your Honor.

25           THE COURT:  So, Ms. Tucci-Jarraf, before court this

1  morning, did you --

2          MS. DAVIDSON:  Your Honor, might I be heard?

3          THE COURT:  Yes.

4          MS. DAVIDSON:  Just briefly.  The United States, it's

5  not typically our role to object to standby counsel or counsel,

6  but the rules provide that the defendant must be indigent to

7  have appointed counsel.

8          THE COURT:  I was just about to go over the --

9          MS. DAVIDSON:  Yes, Your Honor.  And I just wanted to

10  point out several inadequacies with her interview.  She says

11  that she's fully supported by her husband, but she refuses to

12  give any information regarding her husband.

13          And the defendant was arrested at the Trump Hotel, and

14  we proffer that she was paying for that hotel, and it was $700 a

15  night.  If you also look at her travel, it looks that her

16  travel, she has substantial means.  And we would oppose her

17  being treated as indigent simply because she chooses not to

18  work.

19          Thank you, Your Honor.

20          THE COURT:  All right.

21          THE DEFENDANT:  Your Honor, may I respond to that?

22          THE COURT:  Yes.  Mr. Lloyd, at every step from here

23  on, you're not appointed yet.  We're talking about you being

24  appointed.  But I hope you will advise her at least of her

25  rights against self-incrimination that I've tried to remind her.

1    I'm very willing to discuss the matters that we normally discuss

2    in every case, because those shouldn't be detrimental or the

3    least bit incriminating.  But I never know what somebody is

4    going to say, and it could be detrimental to them, so...

5              MR. LLOYD:  Well, Your Honor, let me -- if I might, I

6    was present this morning for the defendant's interview --

7              THE COURT:  Right.

8              MR. LLOYD:  -- that generated the recommendation

9    offered to the Court this morning by pretrial services.  With

10   respect to the means of Ms. Tucci-Jarraf's husband, obviously,

11   in the marshal's lockup, Mr. Jarraf was not there.  I believe

12   that he would be happy to talk with the pretrial services and

13   probation officers about that.

14             I am informed that -- that the defendant did spend the

15   night with two other people at the president's hotel inside the

16   District of Columbia, and that it was for significantly less

17   than $700, split three ways.

18             And apart from that, I would like to make it plain on

19   the record that the defendant is advised by me, as standby

20   counsel, that in responding to the Court's inquiries, she needs

21   to make certain that she does not provide a response under oath

22   that would place her at risk for prosecution of any crime

23   against the United States or any of its states.

24             I have found Ms. Tucci-Jarraf to be very capable of

25   understanding my advice and statements.  I hope she continues to

1   be.

2           THE COURT:  All right.  I think she does too.  I'm just

3   trying to always at every turn remind people, because sometimes

4   they just take off and start talking and eventually say

5   something that's very detrimental to them.

6           MR. LLOYD:  And I thank the Court for that, because

7   I've had what feels like more than my share of very chatty

8   defendants.

9           THE COURT:  Yes, yes.

10          MR. LLOYD:  Usually sitting in the backs of police

11  cruisers.

12          THE COURT:  Well, and invariably, they think that that

13  is assisting them, and I can appreciate probably why, but

14  because she's law trained, she would understand that none of

15  that would really be beneficial to her in front of me, you know,

16  in this particular case, because my decisions are very limited

17  in these -- in these confines, if you will, to what I'm asking

18  her.  So I'm not trying her case.  I'm not going to be trying

19  her case, and I'm just trying to get through the basics on this.

20          So, Ms. Tucci-Jarraf, prior to the hearing in this this

21  morning, I believe you met with the probation officers and

22  provided information, and then signed a financial affidavit.

23          Is that correct?

24          THE DEFENDANT:  Yes, that is correct.  I met with

25  Ms. Smith.

1          THE COURT:  Pardon?

2          THE DEFENDANT:  I did meet with Ms. Smith and signed a

3   financial affidavit.

4          THE COURT:  All right.  And is the information you

5   provided on there true and correct?

6          THE DEFENDANT:  The only thing that seems to be -- as

7   far as I said that -- where it says, "she shared her husband

8   supports her financially," I said that he actually works and

9   that money all goes to supporting our four children, and that I

10  didn't know what his finances were because he had just received

11  a new job with a promotion recently, so I wasn't sure what the

12  amount was, and that they would have to speak to him when he

13  showed up here in court.  Obviously, there hasn't been a moment

14  for them to do that yet, but that he would willingly share that

15  information.

16         As far as what I live off of, it is stated correctly in

17  here with the bank accounts at 48, and as Mr. Lloyd had spoken

18  about earlier regarding the room, it was accurate what he had

19  stated.  There was three people sharing the costs, and the room

20  was well under the 700 -- it was 359 on a -- from the Internet.

21  So it was actually cheaper for us to stay there.

22         So I'm not sure where the State is getting the

23  information on that.  Then, again, I was picked up.  So I don't

24  know what the bill actually was at that point, the service and

25  fees, taxes.

1    THE COURT:  So -- okay.  So, generally, here's the
2  questions I usually ask people.  So all the money you have in
3  all the bank accounts, security account, any kind of account of
4  any nature is $48?
5    THE DEFENDANT:  Yes.  Other than the treasury direct
6  deposit account, yes.
7    THE COURT:  Other than what?
8    THE DEFENDANT:  An account that I don't have access to,
9  which is what I believe that they're alleging a conspiracy
10  against.
11    THE COURT:  Okay.  And as far as employment for you, it
12  says you last worked May 2016 from home, is that correct, as a
13  consultant, lawyer consultant?
14    THE DEFENDANT:  Actually, from -- until May 19th, 2016,
15  I actually was traveling around the world doing a job, but that
16  was to foreclose on a whole bunch of different international
17  corporations.  That job was done as of May 16th or May 19th.
18  And I came back here to start a consulting business.  It was
19  just starting and getting up off the ground when I was in DC.
20  So I hadn't received anything other than the $700, which I
21  utilized for costs to stay in DC.
22    THE COURT:  All right.  So you've only earned $700 from
23  that consulting business.
24    THE DEFENDANT:  Yes.
25    THE COURT:  All right.

UNITED STATES DISTRICT COURT

THE DEFENDANT:  And the amount 48, I don't know if
that's the current amount right now.  It could be a little less.

THE COURT:  Go ahead.  I'm sorry.

THE DEFENDANT:  That was the -- the 48-dollar account
and then a credit card, which has been since frozen, so those
were my only two means.

THE COURT:  And do I understand that you don't own any
real property?

THE DEFENDANT:  I have no real property, no.

THE COURT:  And if you were to work -- if I were to
release you and you were to work, do you have any idea what your
income would be?

THE DEFENDANT:  You know, probably around the same
amount, 700 -- say 700 a month, and that would be very
liberal --

THE COURT:  Okay.

THE DEFENDANT:  -- at this point.  Because of this case
and everything else, I don't know if I would be able to get
anything except for remedial, such as waitressing or anything
else at this point --

THE COURT:  All right.

THE DEFENDANT:  -- due to this pending charge.

THE COURT:  All right.  And your husband is Youssef
Jarraf?

THE DEFENDANT:  Yes.

1          THE COURT:  And he works at Logan International?

2          THE DEFENDANT:  He would have to speak directly because

3    I'm not sure of all the facts, but he works --

4          THE COURT:  You don't know where your husband works?

5          THE DEFENDANT:  Well, the new company that he started

6    for --

7          THE COURT:  I didn't ask that.  I just asked where.

8          THE DEFENDANT:  It's -- the Sky company is in

9    Massachusetts -- Boston, Massachusetts, but they do all the

10   servicing for -- as I understand it, they do all the servicing

11   for the airplanes at Logan International Airport, which is where

12   he's located.

13         THE COURT:  So he works at Logan International.

14         THE DEFENDANT:  But not for Logan International.  It's

15   for another company.

16         THE COURT:  I didn't ask that.  I just asked where.

17         Okay.  And just in rough numbers, what kind of income

18   does he have per year?

19         THE DEFENDANT:  May I inquire as to that?

20         THE COURT:  You don't know?

21         THE DEFENDANT:  Like I said, he got a raise.  I don't

22   know what --

23         THE COURT:  Before he got the raise.

24         THE DEFENDANT:  I believe it was a minimum wage

25   starting and then there was a promotion or some amount higher

1    that he's getting now.

2            THE COURT:  All right.

3            THE DEFENDANT:  But he would be able to confirm

4    directly with Mr. Miller and Ms. Smith.

5            THE COURT:  I assume that it's under $30,000 a year?

6            THE DEFENDANT:  I would say that's a safe assumption.

7            THE COURT:  Okay.  And just for the sake of clarity, is

8    Mr. Jarraf in the courtroom?

9            THE DEFENDANT:  He is.

10           THE COURT:  Is that accurate that you make less than

11   $30,000 a year?

12           MR. JARRAF:  Yes.

13           THE COURT:  He said yes.

14           Returning to you, Ms. Tucci-Jarraf, does that income

15   also go to help support your four minor children?

16           THE DEFENDANT:  As far as I know, all that income goes

17   to supporting the four minor children.  I haven't seen any of

18   that income.

19           THE COURT:  All right.  All right.  I'm going to find

20   that she qualifies at this point to have appointed standby

21   counsel.

22           I'm appointing you, Mr. Lloyd, to serve as elbow or

23   standby counsel pursuant to the Criminal Justice Act, 18 U.S.

24   Code Section 3006A.  It is my hope that you will aid and, to

25   some extent, relieve me of having to explain and enforce all the

                 UNITED STATES DISTRICT COURT

1    basic rules of courtroom protocol, procedure, and decorum.  You

2    should help Ms. Tucci-Jarraf with regard to procedural and

3    evidentiary obstacles that she might find in completing a task,

4    like we mentioned earlier, introducing evidence or objecting to

5    testimony.  And also you can provide her technical assistance in

6    the presentation of her defense and preserving the record for

7    appeal.

8            Do you understand the role?

9            MR. LLOYD:  Yes, Your Honor.  Could I ask the Court's

10   indulgence with respect to appointing me as of this past

11   Thursday when I first appeared in this case?

12           THE COURT:  I take that is for voucher purposes?

13           MR. LLOYD:  Yes, Your Honor.

14           THE COURT:  If you'll submit it as a nunc pro tunc, the

15   Court will be inclined to do so.  I want to think about that for

16   a minute.  But it's not anything we need to take up at this

17   moment.  So that will come later.  Okay?

18           MR. LLOYD:  Thank you, Your Honor.

19           THE COURT:  All right.  So at this point,

20   Ms. Tucci-Jarraf, you represent yourself.  Mr. Lloyd will

21   continue to aid you on a limited basis as your elbow or standby

22   counsel.

23           All right.  I understand we're here for a detention

24   hearing.  And what's the government's position and why?

25           MS. DAVIDSON:  Your Honor, we believe that

1   Ms. Tucci-Jarraf is a risk of flight, and we ask that she be

2   detained.

3           THE COURT:  Okay.  All right.  Ms. Tucci-Jarraf, we're

4   going to have a detention hearing.  In federal court, some

5   people refer to it as a bail hearing or bond hearing, different

6   terms.  It's probably more technically correct to call it a

7   detention hearing, but we operate under the rules of the Bail

8   Reform Act in the federal statutes.

9           Are you familiar with the Bail Reform Act?

10          MS. TUCCI-JARRAF:  No, I'm not.

11          THE COURT:  All right.  It will -- looks like Mr. Lloyd

12  has his handy-dandy Federal Rules there, and if you'll turn to

13  18 U.S. Code, I think it's Section 3142.  And you won't have

14  time to get a complete primer on the rules, but, generally, I

15  will be looking at the factors in Subsection G in making my

16  decision on release or detention.  So you can at least have that

17  handy to go by.

18          All right.  Any opening statements or do you just want

19  to put on your first witness?

20          MS. DAVIDSON:  Your Honor, I just plan on proffering

21  and arguing basically the pretrial services report.

22          THE COURT:  All right.

23          MS. DAVIDSON:  Your Honor, if you -- and I know that

24  you have thoroughly reviewed this, but we argue this based on

25  the fact of her extensive travel in the past few years.  You

1   notice that she's been in Morocco, Italy, Spain, England,

2   Switzerland, China, and she currently resides in Massachusetts.

3           She has zero ties to the Eastern District of Tennessee,

4   no ties at all.  She doesn't have employment.  And we believe

5   that she has no reason to come back and submit to this court.

6   She has at length talked about how this court has no

7   jurisdiction over her, and I do not believe that she will submit

8   to any orders of this court.

9           And based on the fact that she does not believe that

10  this court has any personal jurisdiction over herself, we can't

11  count on her to comply with any court orders by this court.  And

12  once she is released, I don't know how we can have any assurance

13  that she will ever be back in the Eastern District of Tennessee.

14          So based on all this, Your Honor, we believe that the

15  defendant is just too much of a risk of flight and should be

16  detained.

17          I know that -- that the -- also the fact that I don't

18  believe that she will comply with the laws.  Now, we're not

19  moving for that basis, but the defendant is on the Internet at

20  length.  She has quite -- she puts out YouTube videos.  She

21  espouses the fact that everyone is entitled to a special

22  account, which is in the Federal Reserves, and they should all

23  go out there and access it by using the routing number.  And so

24  she's a proponent of commit -- asking other people to violate

25  the law.  And we're very troubled of that also.  We do not

1  believe that she will comply with the laws of the United States

2  if she is released.

3          However, at this point, we are most concerned that she

4  will not comply with any bond requirements or any orders of this

5  court.  And so we ask that she not be released.

6          THE COURT:  All right.  Anything else?

7          MS. DAVIDSON:  No, Your Honor.

8          THE COURT:  All right.  Ms. Tucci-Jarraf, do you wish

9  to put on any evidence?

10          MS. TUCCI-JARRAF:  Yeah.  Thank you, Your Honor.

11          THE COURT:  Uh-huh.

12          MS. TUCCI-JARRAF:  Well, first off, I'd like to state

13  across the board that U.S.A. does not carry her burden.

14          THE COURT:  Say what?

15          MS. TUCCI-JARRAF:  That the U.S. attorney did not carry

16  her burden to prove that I would be a flight risk.  All of my

17  recent movements have been to the U.S., not from.  Also to --

18  I've also made arrangements to live in housing here in your

19  judicial district --

20          THE COURT:  Oh, okay.

21          MS. TUCCI-JARRAF:  -- for the duration of this case.

22  It's already prepaid by colleagues of mine that I worked with

23  throughout the United States, as well as internationally.  This

24  case is a matter of extreme public interest, so it behooves me

25  to actually move forward with this case to its final

                    UNITED STATES DISTRICT COURT

38

disposition, whatever that may be.

Also I'm willing to comply with all the bond requirements if any are set. I have a passport, which I'm more than willing to surrender. My travel, extensive travel over the years, I do acknowledge that I have had extensive travel, but it was for my work. I had over 250 corporations that I had to foreclose on throughout the world. And that -- once that work was done, which was January of 2016, I made arrangements for my family and myself to move back here so we could start doing the actual announcements, so all of my ties are actually with the United States.

I have no residencies or ties in any other countries. Like I said, even the work that I did in those years was specifically due to making foreclosures on registrations and giving notices to them directly.

THE COURT: Have you traveled since May of 2016?

MS. TUCCI-JARRAF: No. Just to Washington state where my --

THE COURT: Yeah.

MS. TUCCI-JARRAF: -- father is, but that's it.

THE COURT: Okay.

MS. TUCCI-JARRAF: So, again, I have residency, which I gave --

THE COURT: Where would you -- where would you be residing in this district?

UNITED STATES DISTRICT COURT

1        MS. TUCCI-JARRAF:  Mr. Lloyd has that address.

2        THE COURT:  Where would that be, Mr. Lloyd?

3        MR. LLOYD:  If Your Honor please, it's in Oak Ridge,

4   and I'm searching for the specific address.

5        One of the witnesses here for this defendant is the

6   person who offered that residence for rent via BnB and could

7   inform the court about that arrangement.

8        THE COURT:  Okay.  That's fine.

9        MS. TUCCI-JARRAF:  I have a number of witnesses that

10  have traveled from different areas of the United States to be

11  here, and more than likely a number of witnesses for myself will

12  be here during the entire proceedings through the disposition of

13  this case.  If the Court would like to hear from the property

14  manager of where I will be staying and have already prepaid

15  for --

16       THE COURT:  Sure.  You can call any witness you'd like.

17       MS. TUCCI-JARRAF:  Okay.

18       THE COURT:  This is your case now.  You're in charge.

19  You have to remain seated yourself, but they can come on up.

20       MR. LLOYD:  I was about to ask Your Honor whether you

21  wanted the defendant to be at the podium.

22       THE COURT:  Yeah.  If she can just move the mic closer

23  so I can be sure we get everything down that she says.

24       Ma'am, if you'll come up here.  This is where the

25  witnesses sit.

1          So if you'll be sure to speak into the microphone so

2     the witness can hear you.

3          If you'll raise your right hand, ma'am.

4          THE COURTROOM DEPUTY:  Do you solemnly swear or affirm

5     to tell the truth, the whole truth, and nothing but the truth,

6     so help you God?  If so, please say, "I do."

7          THE WITNESS:  I do.

8          THE COURTROOM DEPUTY:  Thank you.  You may be seated.

9          THE COURT:  Be sure to ask her her name and how to

10    spell it.

11         MS. TUCCI-JARRAF:  Okay.

12         THE COURT:  You can have a seat, yes.

13         MS. TUCCI-JARRAF:  Your Honor, I'm not able to see her.

14         THE COURT:  Okay.  Do you want to come up to the

15    podium?

16         MS. TUCCI-JARRAF:  If I might.

17         THE COURT:  All right.  If the marshals have no

18    objection, we'll have her come up to the microphone, and they'll

19    be right behind you.  Thank you.

20         No.  You can stay --

21         THE WITNESS:  Oh, okay.

22         THE COURT:  -- seated.  She goes up there, not you.

23    Just pull that microphone down to you and speak right into it.

24    Okay.  Thank you, ma'am.

25

UNITED STATES DISTRICT COURT

1    WHEREUPON,

2                         **MARIE WASILIK,**

3    was called as a witness and, after having been first duly sworn,

4    testified as follows:

5                    **DIRECT EXAMINATION**

6    BY MS. TUCCI-JARRAF:

7        Q    Good morning.  Could you please state your name and

8    spell your last name for the record?

9        A    My name IS Marie Suzanne Wasilik.  And my last name is

10   W-a-s-i-l-i-k.

11       Q    And at this hearing, we're discussing about a possible

12   residence for me to stay in this judicial district.  Could you

13   please state the address of that particular residence?

14       A    It's 105 Orchard Lane, Oak Ridge, Tennessee.

15       Q    Okay.  And is it correct that you are in agreement to

16   rent that property to me --

17       A    Yes, yes.

18       Q    -- for the duration of this case?

19       A    Uh-huh.

20       Q    Okay.  And I believe it's -- some of it has been paid

21   already.  Is that correct?

22       A    Correct.

23       Q    How much has been paid already?

24       A    $824.

25       Q    And that was paid by one of my colleagues.  Is that

1    correct?

2         A    (Moving head up and down.)

3         Q    Which colleague was that?

4         A    That was Bill Ferguson.

5         Q    And he's in the --

6              THE COURT:  How do you spell that?

7              MS. TUCCI-JARRAF:  If I might, Your Honor?

8              THE COURT:  Yes.

9              MS. TUCCI-JARRAF:  It's -- his full name is William

10   T. --

11             THE COURT:  Well, all I need is what she testified to,

12   which is Bill somebody.

13             MS. TUCCI-JARRAF:  Okay.  Ferguson.  F -- excuse me.

14   S-o-n is the ending of Ferguson.

15             THE COURT:  F-e-r-g-u-s-o-n?

16             MS. TUCCI-JARRAF:  Yes, sir.

17             THE WITNESS:  F-e-r-g-u-s-o-n.

18             THE COURT:  Okay.

19   BY MS. TUCCI-JARRAF:

20        Q    And approximately how many minutes is that residence

21   from this courthouse?

22        A    I'm about 30 minutes away.  I don't know how many miles

23   that is.

24        Q    Okay.  So about 30-minute drive to this courthouse?

25        A    Yeah.

                         UNITED STATES DISTRICT COURT

Marie Wasilik - Direct Examination

1    Q    Okay.  And as far as the remainder of the payment,

2  there's a schedule -- a payment schedule that's been arranged --

3    A    Right.

4    Q    -- correct?

5    A    Right.  I -- I've been paid that 824 up front, and then

6  there's pending payments as the time goes on.

7         MS. TUCCI-JARRAF:  Right.  Okay.  All right.  Thank

8  you, Your Honor.

9         THE COURT:  And what are those?  What are those

10  payments?  What does 824 get you?

11         THE WITNESS:  That's for the beginning of a three-month

12  stay.  Bill Ferguson has paid up till the 27th of November.

13         THE COURT:  Okay.  And then after that, what's the

14  payment schedule, how much a month?

15         THE WITNESS:  Well, it seems like I've got -- it ends

16  at the 27th, but I -- and the whole payment was something like a

17  thousand, $1400, but I've only got 825 of it.  So as the time

18  goes on, I get, you know, maybe October, I get -- I'll get

19  another 300 and something.  I haven't studied the details.

20  BY MS. TUCCI-JARRAF:

21    Q    I believe -- is it -- you sent over a payment schedule

22  that another payment was due in September, towards the end of

23  September and another one towards the end of October?  Does that

24  sound correct?

25    A    I think so.

UNITED STATES DISTRICT COURT

1      Q     And the total is about $1500 with the -- with the

2   service fee --

3      A     Right.

4      Q     -- for the Airbnb website --

5      A     Right.

6      Q     -- that you market on?

7      A     Right.

8      Q     Okay.

9            THE COURT:  And how much is it a month?

10           THE WITNESS:  1400 divided by three.

11           THE COURT:  So about 466.66?

12           THE WITNESS:  It's quite cheaper than -- it's around

13   $15 a day.

14           THE COURT:  Okay.  That's fair enough.  Okay.

15  BY MS. TUCCI-JARRAF:

16     Q     And is it a separate residence?

17     A     It's a little mother-in-law apartment within my house.

18   It's got a kitchen, a bathroom, a bedroom with a trundle bed,

19   and a little living room.

20           MS. TUCCI-JARRAF:  Okay.  Thank you.  I have no further

21   questions.  Thank you.

22           THE COURT:  Thank you very much.

23           Anything from you, Ms. Davidson?

24           MS. DAVIDSON:  Yes, Your Honor.

25           THE COURT:  All right.

                    UNITED STATES DISTRICT COURT

1          **CROSS-EXAMINATION**

2     BY MS. DAVIDSON:

3          Q    Ms. Tucci-Jarraf keeps talking about William Ferguson

4     being one of her colleagues.  Colleagues in what?

5          A    I don't know.

6          Q    And what is your relationship with Mr. Bill Ferguson?

7          A    He's a friend of mine.

8          Q    And do you have any prior relationship with

9     Ms. Tucci-Jarraf?

10         A    No.

11         Q    Do you also live at this residence?

12         A    Yes.

13         Q    And so tell me exactly how this whole transaction

14    occurred.  Did Mr. Ferguson find out you had a room for rent?

15         A    Right.  He researched the Airbnb and found -- and was

16    looking for a place to house Heather for three months.

17         Q    And so you have no relationship with the defendant?

18         A    No.

19         Q    So you would be simply a landlord?

20         A    Correct.  Yeah.

21         Q    What does Mr. Ferguson do?

22         A    I think he's an IT guy, and he's getting his PhD in

23    some kind of rocket space science.

24         Q    Do you have a job?

25         A    No.  I'm a retired mail carrier.

1    MS. DAVIDSON:  May I have a minute, Your Honor?

2    THE COURT:  You may.

3    MS. DAVIDSON:  That's all I have.  Thank you.

4    THE COURT:  All right.  Anything further,

5  Ms. Tucci-Jarraf?

6    MS. TUCCI-JARRAF:  Just, Your Honor, that Mr. Lloyd has

7  pulled up the actual receipt for the payment as well as the

8  payment schedule from an actual Airbnb website that most people

9  who rent their properties on --

10    THE COURT:  Okay.

11    MS. TUCCI-JARRAF:  -- so that we do have an actual

12  receipt --

13    THE COURT:  All right.

14    MS. TUCCI-JARRAF:  -- that can be made available to --

15    THE COURT:  I don't think anybody questions that she's

16  been paid 824.

17    MS. TUCCI-JARRAF:  Okay.  Just a matter to clean the

18  record, I have one question for her.

19    THE COURT:  Sure.  Sure.  Absolutely.

20                      **REDIRECT EXAMINATION**

21  BY MS. TUCCI-JARRAF:

22    Q    Just to clean up the record, you mentioned that

23  Mr. Ferguson was getting his degree for rocket scientist.  Is

24  that perhaps what his daughter is getting who works for NASA?

25    A    I was just reading his profile on the Airbnb, so I --

Marie Wasilik - Redirect Examination

1    maybe I was confused.

2        Q    Okay.  All right.  Just any other -- was there any

3    other contact by any of my other colleagues to be able to check

4    out the room or rent the room?  It was just William Ferguson

5    that you spoke to?

6        A    Yeah.

7            MS. TUCCI-JARRAF:  Okay.  Thank you.  No further

8    questions.

9            THE COURT:  Thank you.

10           Anything else, Ms. Davidson?

11           MS. DAVIDSON:  No, Your Honor.

12           THE COURT:  All right.  Thank you, Ms. Wasilik.  You

13   can --

14           THE WITNESS:  Thank you.

15           THE COURT:  -- have a seat back in the audience.  Thank

16   you, ma'am.

17           THE WITNESS:  I got to pay my parking meter.

18           MS. TUCCI-JARRAF:  Thank you.

19           THE COURT:  All right.  Do you have any other

20   witnesses?

21           MS. TUCCI-JARRAF:  If I might have just a second, Your

22   Honor.

23           THE COURT:  Sure.  Absolutely.

24           MS. TUCCI-JARRAF:  The only other thing that I would

25   like to ask the Court for permission is for my husband to hand

me my passport so that I can at least present that to the Court

showing that it's here so that if there is a recommendation for

surrendering it, to be able to have personal recognizance or to

go by the probation's report, the Court knows that it's here.

THE COURT:  I have no problem with that.  But I just

ask him to hand it to the marshal.

MS. TUCCI-JARRAF:  Yes, sir.

THE COURT:  And let the marshal hand it to Mr. Lloyd.

Mr. Lloyd can present it to the Court.

MS. TUCCI-JARRAF:  Thank you.  So Mr. Lloyd has the

passport.

THE COURT:  Is that the only passport you have?

MS. TUCCI-JARRAF:  It is the only passport that I have.

THE COURT:  Okay.

MS. TUCCI-JARRAF:  And I am willing to surrender that

for the duration of this case until disposition is made.

THE COURT:  Okay.

MS. TUCCI-JARRAF:  I also would like to confirm to the

Court that I would be staying -- if the Court agrees to this,

that I would be staying at the residence that has been offered

by witness testimony for the duration of this case until

disposition is made.

THE COURT:  Okay.  Part of the question, of course, the

Court would have is, who's going pay for the rest of the three

months, and who's going to pay after that?

1     MS. TUCCI-JARRAF: As far as the rest of three months

2 or if this case goes longer and we have to extend the stay, it

3 will be myself. I plan on doing any kind of work that I'm able

4 to once I get out. I have a -- I do have a lot of contacts, and

5 most of my work is -- can be done at home, producing documents,

6 et cetera, document data processing, as well as any of my former

7 colleagues.

8     And when the State had asked about colleagues, these

9 are people I've worked with in media. They're people I've

10 worked with in -- on different industries such as medical, et

11 cetera that have -- are in support of all this information

12 coming out, and that I stay here for the duration of this case

13 so that that information can come out, because it is --

14     THE COURT: Would it require you to travel outside of

15 this area?

16     MS. TUCCI-JARRAF: No. No. I can stay here. I do not

17 need to travel except for to visit with my attorney or to come

18 to court.

19     THE COURT: All right. There's a gentleman in the back

20 that raised his hand when I asked who was going to pay for all

21 this.

22     And what's your name, sir?

23     MR. FERGUSON: William Ferguson.

24     THE COURT: Well, your name has been taken wouldn't say

25 in vain, but it's been uttered here. Are you willing to

1   continue to pay the rent on Ms. Wasilik's room for

2   Ms. Tucci-Jarraf for the at least foreseeable future for, say,

3   the next six months?

4           MR. FERGUSON:  Yes, sir.

5           THE COURT:  Okay.

6           MR. FERGUSON:  I'm not a rocket scientist.

7           THE COURT:  I'm not either.  All right.  Any other --

8   if you'll hand that up, Mr. Lloyd.

9           MR. LLOYD:  May I approach?

10          THE COURT:  You may.

11          MR. LLOYD:  For the record, I have shown the passport

12  to counsel for the government.

13          THE COURT:  All right.  If you'll just hand that to

14  probation.  I don't really need to see it.  They're the ones

15  that would secure it and maintain it.

16          MS. TUCCI-JARRAF:  Okay.  Thank you.

17          THE COURT:  Okay.  Any other witnesses that you would

18  want to call?

19          MS. TUCCI-JARRAF:  At this moment, Your Honor, I do not

20  have any further witnesses nor evidence to present to this Court

21  in regards to the detention hearing matter.

22          THE COURT:  Okay.  Any further argument, Ms. Davidson?

23          MS. DAVIDSON:  Yes, Your Honor.  Just regard to the

24  residence.  Your Honor, this is a -- all the defendant has

25  offered is that she has a resident available to her in Oak Ridge

1    prepaid by someone else.  There's still no evidence that she

2    would actually go there.  She has that ability if she chooses

3    to, but her family, her husband, her four kids all reside in a

4    different district.

5         She still, with the exception of showing that she has

6    an apartment available for her use if she chooses to use so, has

7    not shown any ties to this district.  And so we -- and we

8    continue to point out that she does not believe that this Court

9    has any jurisdiction over her.

10        Thank you, Your Honor.

11        THE COURT:  All right.  Ms. Tucci-Jarraf, do you have

12   argument to make on behalf of yourself?

13        MS. TUCCI-JARRAF:  Yes, Your Honor.  All that the

14   government has offered assumes that I will not honor my

15   obligations to this -- to bail or to Court or to the honor of

16   the letter of the law that we are addressing in these matters.

17   I have dedicated my life for 17 years to law, and I understand

18   when there -- regardless of whether there's a disagreement or a

19   different position as far as what law is applicable, I have

20   always, always gone in to reconcile those matters in a very

21   peaceful way and always honoring my obligations.

22        I have sworn to this Court under oath that I am going

23   to be making these court appearances.  You have already on the

24   record that I did have a criminal matter that I had to attend to

25   in Washington state, which I didn't have any failure to appears.

1    I've never failed to appear.

2           I have been a member of the bar system.  I've been a

3    member of the courts, an officer of the courts at one time.  And

4    I understand the implications as well as the importance of

5    meeting these obligations.

6           So I have my word and my honor, and if the Court

7    requires any further assurances that I will be making these

8    court dates, other than just my word and my performance history,

9    then I'm willing to hear those and then make comment on that as

10   well.  I've already surrendered my passport, so I'm not able to

11   travel, and I don't have a license, so I'm not able to drive

12   anywhere.  I'm going to be living at that address until this

13   Court -- again, this Court has resolved and disposed of this

14   matter.

15          THE COURT:  All right.  So if I were to release you,

16   you would need to sign the three-page order that we have that

17   releases you on conditions and sets forth the conditions.  Of

18   course, we would provide you a copy of that, so you would know

19   precisely what all the conditions are.

20          Are you agreeable to signing such a document?

21          MS. TUCCI-JARRAF:  I am agreeable to signing such a

22   document.

23          THE COURT:  It also provides that -- where you sign it

24   and before you sign it that you promise to obey all the

25   conditions of release and to appear as directed and to surrender

1    for service of any sentence that might be imposed.

2          Do you so agree?

3          MS. TUCCI-JARRAF:  I do.

4          THE COURT:  All right.  Now, in this particular case,

5    the assistant United States attorney has indicated that you

6    don't have any prior residence here, and that all of your

7    contacts appear to be elsewhere.  Where does your husband live?

8          MS. TUCCI-JARRAF:  My husband lives at the Lynn

9    address.

10          THE COURT:  Lynn, Massachusetts.

11          MS. TUCCI-JARRAF:  Lynn, Massachusetts, yes.

12          THE COURT:  And he --

13          MS. TUCCI-JARRAF:  But he flies here for -- when we

14    can, if there's the money to afford him to fly, he will be here

15    at these hearings to support me.

16          THE COURT:  And your four children, where do they live?

17          MS. TUCCI-JARRAF:  They live at the same address or

18    have lived at the same address, but due to this court case and

19    since I'm -- was the primary caregiver, my sister is stepping in

20    to help with the children to be able to get them to school and

21    everything else, because Youssef works.  So they will be staying

22    with her until this case is disposed of.

23          THE COURT:  Well, you said they lived at the same

24    address.  They live in Lynn, Massachusetts?

25          MS. TUCCI-JARRAF:  They have lived in Lynn

1    Massachusetts, I said, for the same amount of time I have.  But

2    just recently we've had to have them go to be with my sister and

3    my father, so that they can do schooling, and Youssef is able to

4    work to be able to support them, since I'm the primary caregiver

5    for the children, to make sure that they get to school and take

6    care -- because we have four minor children, as I told

7    Ms. Smith.

8                THE COURT:  Right.  Where do they live?

9                MS. TUCCI-JARRAF:  They right now are in transition

10   over to -- they're in Washington state, have been for the last

11   three weeks doing a vacation, but due to this case --

12               THE COURT:  Where do they live?

13               MS. TUCCI-JARRAF:  In Gig Harbor, Washington.

14               THE COURT:  Okay.  Do you own any residence there?

15               MS. TUCCI-JARRAF:  No.  They are staying with my

16   sister, and my father is close by to assist her.

17               THE COURT:  Okay.  Ms. Davidson also raised the specter

18   of no employment, but you've indicated to me that you intend to

19   try to secure some form of employment acknowledging that you'll

20   have to stay in this area, even if you get employed.

21               MS. TUCCI-JARRAF:  Yes.  The -- I had started a startup

22   just prior to being picked up in DC.  And that allows me -- that

23   startup allows me to work from home and to do data processing or

24   document creation, so I'm able to work from -- from the

25   residency that Ms. Wasilik gave you.

                        UNITED STATES DISTRICT COURT

1          THE COURT:  So the tougher issue is that Ms. Davidson

2     says that she doesn't -- you wouldn't believe that I have any

3     authority over you, so you wouldn't submit to the orders of this

4     Court because you don't believe I have any jurisdiction.  So

5     that if you don't believe I have any jurisdiction, then you do

6     what you want, because I have no say-so.

7          MS. TUCCI-JARRAF:  May I respond?

8          THE COURT:  Please.

9          MS. TUCCI-JARRAF:  As I had said before, when there is

10    a matter of jurisdiction or a matter where we don't agree on

11    what law is applicable, I still have a long performance history

12    of 17 years -- obviously, when we do the jurisdiction issue,

13    there will be the matter of the fact that the United States,

14    which is a federal corporation, was foreclosed, but yet I still

15    travel with a passport, because that's what's required by

16    customs agents, et cetera.  I have followed all of the laws and

17    regulations until such time as there is a disposition in that

18    matter.

19         And, again, I have requested the hearing so we could do

20    a disposition on -- or excuse me, a decision, determination on

21    jurisdiction.  If I just believe there's no jurisdiction, I

22    would have just taken off without any regard, but that's not the

23    case.  I have highest regard for law, and this is a matter of

24    just a conflict of law that we need to determine in a very

25    peaceful and in a procedural way, which is what we're doing.

1           THE COURT:  Right.  And I'm going to give you a full

2    hearing on that issue on a separate day and time.  But if I

3    release you, I need to know that until I make a ruling on that

4    issue, that you understand that your release is conditional

5    based on my order.

6           MS. TUCCI-JARRAF:  That I absolutely understand.

7           THE COURT:  You have to understand that you have to

8    submit to this release order.

9           MS. TUCCI-JARRAF:  I -- I'm aware of that, I understand

10   that, and I agree to that until we are able to determine that.

11          THE COURT:  And you have to understand that if you

12   don't, then I will issue a warrant for your arrest and have you

13   brought in here and will go over the violation, which would

14   probably result in you being locked up.

15          MS. TUCCI-JARRAF:  I'm very aware of that.  And after

16   the 30-day tour that the U.S. Marshals just gave me, I'm not

17   looking to repeat that at all.

18          THE COURT:  Okay.  If you abide by the rules and follow

19   my conditions, you won't have a single problem with that.

20          MS. TUCCI-JARRAF:  I do accept your -- your rules at

21   this time to go -- to go forward with the determination.  Even

22   then, I still will accept the determination as you make it on

23   that day.

24          THE COURT:  All right.  So I think what I'm hearing,

25   Ms. Davidson, is she at least accepts my authority for purposes

1   of her release, although she still retains and reserves the

2   right to argue about the Court's overall jurisdiction, either

3   over her or over the case or both.  Is that a fair statement,

4   Ms. Tucci-Jarraf?

5           MS. TUCCI-JARRAF:  That is a true and accurate and

6   complete statement.  Thank you.

7           THE COURT:  Okay.  All right.  Let me take just a

8   couple minutes.  I want to talk to probation about some

9   specifics, and then I will come right back and give you my

10  decision.

11          If Ms. Tucci-Jarraf needs to use the facilities or

12  needs a break or anything like that, you can do that, otherwise,

13  I don't anticipate my recess to be very long, so everybody can

14  stay seated.  If anybody else needs to go outside, do it now,

15  because I'll be resuming probably in about the next five to

16  seven minutes.

17          Okay.  All right.  Court stands in recess at this time.

18          THE COURTROOM DEPUTY:  All rise.  This honorable court

19  stands in recess.

20          THE COURT:  When we come back, I'm going to go over

21  scheduling, so be ready for that irrespective.  Okay?

22      (Recess from 12:01 p.m. to 12:09 p.m.)

23          THE COURTROOM DEPUTY:  All rise.  This Court is again

24  in session with the Honorable C. Clifford Shirley, Jr., United

25  States Magistrate Judge, presiding.

                    UNITED STATES DISTRICT COURT

1          Please come to order and be seated.

2          THE COURT:  All right.  Ms. Tucci-Jarraf, I have

3     decided that I believe you would be a candidate for release,

4     provided you agree to all these conditions and that you agree to

5     sign the same.

6          Okay.  So I want to go over real quickly with you just

7     so you understand them.

8          You're not to violate federal, state, or local law

9     while you're out on release.  Whatever you do, you're not to

10    break the law in any way, shape, form, or fashion, any law.

11         Do you understand that?

12         MS. TUCCI-JARRAF:  I do.

13         THE COURT:  Do you agree to that?

14         MS. TUCCI-JARRAF:  I do.

15         THE COURT:  Okay.  Can you pull that down for her,

16    Mr. Lloyd, just so she doesn't have to be so uncomfortable

17    trying to speak into it?

18         Yes, ma'am?

19         MS. DAVIDSON:  Your Honor, just to be clear,

20    Ms. Tucci-Jarraf is not a licensed attorney and should not be

21    practicing law except with regard to herself.  And if the United

22    States learns of any practice of law, we will bring it to the

23    Court's attention.

24         THE COURT:  All right.  Practicing law without a

25    license is a violation of the law, and so you're not to do that.

1              Mr. Lloyd?

2              MR. LLOYD:  I just couldn't resist the urge to respond,

3    but I would like to.

4              MS. DAVIDSON:  You're not the attorney.

5              MR. LLOYD:  Every unauthorized practice of law is a

6    crime.

7              THE COURT:  Whatever.  We'll --

8              MR. LLOYD:  I hear the bell, Your Honor, and I start to

9    run out.

10             THE COURT:  I understand.  And just stay calm and carry

11   on.

12             Bottom line is, you're not to break the law.  Okay.  If

13   there's a dispute over whether what you're doing violates the

14   law, I may be the arbiter of that.  I would stay away from that,

15   because you don't know what I would decide.

16             If I decide it is a violation of the law, then you get

17   locked up.  If it's not a violation of the law, you stay out.

18   That's a pretty bad risk to run.  So just stay away from

19   anything that might be close.

20             Okay.  You're to be living at the address you told me

21   and nowhere else.  And if you were to change that address or

22   that phone, which you're not going to be allowed to do, unless

23   you get permission in advance.

24             MS. TUCCI-JARRAF:  Okay.

25             THE COURT:  Will you have -- is there a land line there

1  at that residence?  Do we know?

2          Ms. Wasilik, is there a land line phone?

3          MS. WASILIK:  Yes, sir.  There's a land line.  I can't

4  hear on the cell phone.

5          THE COURT:  That's okay.  What is the phone number

6  there?

7          MS. WASILIK:  (865) 482-2998.

8          THE COURT:  All right.  And does it have any extra

9  features on that phone, like Call Waiting, any of that?

10         MS. WASILIK:  It's got Call Waiting.  No.  I don't

11 know.  Yeah.  It's got Caller ID.  And I'm not sure if it's got

12 Call Waiting.

13         THE COURT:  All right.  The reason I ask, one of the

14 conditions is going to be the electronic monitoring for

15 Ms. Tucci-Jarraf, and that requires a land line without any of

16 those features.  Now, you can have one put in in the residence,

17 part of the residence that you're in.

18         MS. WASILIK:  Uh-huh.

19         THE COURT:  Ms. Tucci-Jarraf, where she's going to be

20 in, like the mother-in-law's quarters.

21         MS. WASILIK:  Right.

22         THE COURT:  If she can get a separate phone line put in

23 there, that's fine.

24         MS. WASILIK:  Okay.

25         THE COURT:  If not, we're going to have to use yours.

                    UNITED STATES DISTRICT COURT

1          MS. WASILIK:  Okay.

2          THE COURT:  And that will just mean that the phone

3    company will have to take those features off it.

4          MS. WASILIK:  I see.

5          THE COURT:  So that could be an inconvenience for you.

6          So, Ms. Tucci-Jarraf, it may require you to get a

7    separate phone line.

8          Do you understand that?

9          MS. TUCCI-JARRAF:  I do.

10         THE COURT:  The electronic monitoring works off a land

11   line.

12         MS. TUCCI-JARRAF:  May I --

13         MS. WASILIK:  Can you have Call Waiting -- I mean,

14   Caller ID?

15         THE COURT:  Yep.  I think -- what do you -- is Caller

16   ID okay?

17         PROBATION OFFICER:  It just needs to be a basic phone

18   line with no features.

19         THE COURT:  Yeah.  That's what I've understood.  It has

20   to be a clean line.

21         MS. WASILIK:  Okay.

22         MS. TUCCI-JARRAF:  May I just confer with Ms. Wasilik

23   to make sure it's okay to put an extra phone line in at my cost?

24         THE COURT:  Would it be okay if she put another phone

25   line in at her cost?

                    UNITED STATES DISTRICT COURT

1      MS. WASILIK:  With Airbnb, of course, most everybody

2  uses their cell phone.  If there's a place to put one.

3      THE COURT:  Okay.  Yeah.  So that will be something

4  you'll want to do.  Okay?

5      MS. TUCCI-JARRAF:  Okay.

6      THE COURT:  Do you agree to that?

7      MS. TUCCI-JARRAF:  I do.

8      THE COURT:  Okay.  You're also to obviously report to

9  court as required.  I'm going to give you a motion day for

10  hearing your motions, and then we'll have a trial day for you to

11  also appear for your trial, if it gets that far.  Okay?

12      MS. TUCCI-JARRAF:  Okay.

13      THE COURT:  All right.  You're also to be supervised by

14  a probation officer.  I'm not sure who it will be, but it

15  doesn't matter.  That person will contact you from time to time

16  and ask you to do certain things.  It's incumbent upon you to do

17  them, whether it's appear at probation here or if it's to meet

18  them at your residence or anything, you must do whatever they

19  say.  It's just like me telling you to do it.  Okay?

20      MS. TUCCI-JARRAF:  I'm familiar with that.

21      THE COURT:  All right.  If they -- they're under

22  instructions that if you don't, or if you're not there, they're

23  to pick up the phone and call me, and usually I just issue a

24  warrant for your arrest.  Okay?

25      MS. TUCCI-JARRAF:  Got it.

1          THE COURT:  Good.

2          MS. TUCCI-JARRAF:  Thank you.

3          THE COURT:  You're to continue or actively seek

4   employment.  So I would like you to work.  Be careful what

5   you're working at.  I wouldn't work at anything that might be

6   the least bit questionable to the U.S. Attorney's Office as far

7   as employment.  And -- but I just think working would be a good

8   thing for you.

9          And I tell everybody that will listen, that almost

10  everybody that I have out on release that works never violates.

11  And almost everybody I let out that doesn't work violates.

12         So you're to surrender your passport.  You've already

13  done that.  The other part of that coin is, you're not to obtain

14  a new passport.  Your travel is currently restricted to the

15  Eastern District of Tennessee.  Okay.  So Mr. Lloyd can advise

16  you of the parameters.  It's basically East Tennessee.  But if

17  you needed to go somewhere, if you had a family emergency or

18  something like that, the bottom line is, you have to seek

19  permission before you go.

20         MS. TUCCI-JARRAF:  And just to be clear --

21         THE COURT:  Yes.

22         MS. TUCCI-JARRAF:  -- as far as seeking permission --

23         THE COURT:  Yes.

24         MS. TUCCI-JARRAF:  -- do I contact the probation

25  officer?

                    UNITED STATES DISTRICT COURT

1        THE COURT:  Yes.  You will have a specific probation

2   supervising officer.  You contact them.

3        MS. TUCCI-JARRAF:  Okay.

4        THE COURT:  Generally, we grant permission without a

5   problem, provided we know a few things, where you're going, when

6   you're coming back, who you're going to be with, and why you're

7   going.

8        MS. TUCCI-JARRAF:  Okay.

9        THE COURT:  Okay.  If you don't get permission --

10  here's the problem, if you don't get permission, then you get

11  arrested when you get there or you get arrested as soon as you

12  get back.  So just get permission.  Okay?  It sounds like a bit

13  of a nuisance, but it's vital.

14        Do you understand that?

15        MS. TUCCI-JARRAF:  I do.

16        THE COURT:  Also with you being on electronic

17  monitoring, it will be incumbent, because the second you left,

18  it would look like you were a fleeing felon, okay, or something

19  like that.  Do you know what I'm talking about?

20        MS. TUCCI-JARRAF:  Yeah, I believe that was one of --

21        THE COURT:  So I don't want you to do that.  Don't get

22  anybody upset.

23        MS. TUCCI-JARRAF:  Okay.

24        THE COURT:  You're to avoid any contact with anybody

25  who might be a witness or a victim in this case or your

                    UNITED STATES DISTRICT COURT

1  codefendant, Randall Beane.  You're not to have any contact with
2  any of those people.  So any of the people out at the facility,
3  wherever that was, I can't remember, they -- anybody that might
4  be a witness or a victim or your codefendant.
5            Okay?  Do you understand that?
6            MS. TUCCI-JARRAF:  I do.
7            THE COURT:  All right.  You look like you're bothered.
8            MS. TUCCI-JARRAF:  Well, no.  I'm just -- I have a
9  question --
10           THE COURT:  Yes.
11           MS. TUCCI-JARRAF:  -- if I might.  For preparation for
12 the case, because a lot of the testimony has to be gone over and
13 prepared for the case, how am I to do that if I can't have
14 contact with Randall Beane or his attorney?
15           THE COURT:  Well, you can have contact with his
16 attorney.
17           MS. TUCCI-JARRAF:  And if he's pro se, then what do I
18 do?
19           THE COURT:  Then we'll have to take that up.  But at
20 this point, he's represented by an attorney.
21           MS. TUCCI-JARRAF:  Right.  It was just my understanding
22 he has a hearing today to determine whether to fire that
23 attorney and proceed pro se, so that I wanted to clear that with
24 the Court before we go out of this courtroom and then I have to
25 make a motion.

1        THE COURT:  When you go out of this courtroom, he

2    currently has an attorney, and he may still have an attorney

3    come tomorrow.

4        MS. TUCCI-JARRAF:  Okay.

5        THE COURT:  Or he may not.  But I have to deal with

6    what's happening right now at this moment.  And right now at

7    this moment, you can't talk to him.

8        MS. TUCCI-JARRAF:  Fair enough.  I understand that.

9        THE COURT:  If you both end up pro se, then you can

10   file a motion for contact and we'll have to take that up.  Okay.

11   It would be probably -- Mr. Lloyd could help you, would probably

12   be a motion to modify conditions.  Okay?

13       So you're not to have a firearm or any destructive

14   device or other weapon.  Okay?  That has nothing to do with your

15   rights to have a gun.  It has to do everything with a probation

16   officer walks in where you're living, there's not to be a gun in

17   there.  Okay?

18       MS. TUCCI-JARRAF:  I understand.

19       THE COURT:  So you're not to excessively use alcohol

20   and you're not to unlawfully possess any narcotic drug or

21   controlled substance.  You're not to have any controlled

22   substance unless you have a prescription from a licensed doctor.

23       Do you understand that?

24       MS. TUCCI-JARRAF:  I do.

25       THE COURT:  So I'm only going to -- I'm not going to

1    put you on home incarceration or home detention at this point.

2    I'm just going to give you a curfew, eight o'clock at night till

3    eight in the morning, and then put you on electronic monitoring.

4    Okay.  If you have problems doing that, I may have to up the

5    detention.  But for now, you can get permission to go where you

6    need to go, and just be home by eight o'clock at night, and not

7    leave before eight in the morning.  Okay?

8            Is that -- if that works a hardship with you, you'll

9    let Mr. Lloyd know, and he'll tell you how to contact us about

10   changing that.  Okay?

11           MS. TUCCI-JARRAF:  Okay.

12           THE COURT:  But given your lifestyle and everything at

13   this point, that sounds like it's pretty fair.  Okay?

14           You're to submit to location monitoring.  They'll set

15   up the phone line with you.  You're to report as soon as

16   possible to your pretrial -- or probation officer if you were to

17   be stopped by any law enforcement officer for any reason.  Okay.

18   So if anybody stops you, questions you, anything, you need to

19   contact your probation officer first.  Okay?

20           On the back page where you're going to sign, it

21   provides that if you violate any of these conditions, what I've

22   told you before, I will issue a warrant for your arrest, and

23   potentially revoke your release.

24           It also advises you that if you were to commit another

25   federal felony while you are out on release, it could be up to

1    an additional ten years in prison.

2            It also provides that if you were to obstruct a

3    criminal investigation or if you were to retaliate or attempt to

4    retaliate, tamper with or attempt to tamper with, intimidate or

5    attempt to intimidate any witness, any victim, or any informant,

6    that's another ten years in prison.  Which is why I standardly,

7    you know, put in there stay away from your codefendants, because

8    you don't want to take a chance that somebody alleges, "Oh, she

9    was trying to tamper with me," or "She was trying to intimidate

10   me," or something like that.  You don't -- that wouldn't work to

11   your benefit.

12           MS. TUCCI-JARRAF:  I understand.

13           THE COURT:  I don't have to decide who's telling the

14   truth if you just stay away from them.  But, invariably, people

15   get together and somebody claims something, and the other person

16   says no.  With ten years of prison on the line, you'll have to

17   make the decision about the risk in that.

18           So you understand all those?

19           MS. TUCCI-JARRAF:  I'm aware and I understand it all.

20   Thank you.

21           THE COURT:  Okay.  It says here, where you're going to

22   sign, you acknowledge that you are the defendant in this case

23   and you are aware of the conditions of release.

24           Is that correct?

25           MS. TUCCI-JARRAF:  That's correct.

                    UNITED STATES DISTRICT COURT

1          THE COURT:  You will sign where it says, "I promise to
2   obey all conditions of release to appear as directed and
3   surrender to serve any sentence imposed."
4          Is that correct?
5          MS. TUCCI-JARRAF:  That is correct.
6          THE COURT:  And, finally, it says, "I am aware of the
7   penalties and sanctions set forth above."
8          Is that correct?
9          MS. TUCCI-JARRAF:  That is accurate and correct.
10         THE COURT:  All right.  If you'll hand that up to
11  Ms. Davidson first for review, and then over to Ms. Tucci-Jarraf
12  to sign.  We'll have some -- a little more of the hearing to
13  conclude.
14         And, Mr. Sanchez, where will she be released from?
15         U.S. MARSHAL:  She will be released from Maloneyville,
16  Your Honor.
17         THE COURT:  Okay.  While you're looking at that --
18  because you have been incarcerated, we need to have you
19  processed out of that facility, and I suspect you may have some
20  personal effects there as well.  Most do.
21         MS. TUCCI-JARRAF:  I was on a 30-day tour.
22         THE COURT:  Anyway, bottom line is, they are going to
23  take you back to -- when he said Maloneyville, that's the
24  location of the facility, and then once they process you out,
25  give you clothes, you'll be able to be released from there.

                    UNITED STATES DISTRICT COURT

1    So whoever is going to pick her up, we can give you

2  directions to Maloneyville.  It's out far east and north

3  Knoxville, out by Three Ridges -- next door to Three Ridges Golf

4  Course, out there, and she won't be released anytime soon

5  unfortunately.  They don't -- and by that, I mean, like within

6  the next 30 minutes to an hour.  They have to take some time to

7  do that.  And we're sort of at their mercy as to when they get

8  around to that.  But it will be today.  And they will release

9  you today.

10    MS. TUCCI-JARRAF:  May I just make one request of this

11  Court?

12    THE COURT:  Sure.

13    MS. TUCCI-JARRAF:  If they could write "forthwith" just

14  at the top.  I know that, as you said, we're at the mercy of

15  them, but if you could put "forthwith" at the top of the release

16  order.

17    THE COURT:  That order doesn't go to them.  That order

18  is for you.  They will be orally instructed to process you out.

19    Mr. Sanchez, if you will ask them to process her

20  forthwith.

21    U.S. MARSHAL:  Yes, Your Honor.

22    THE COURT:  That the Court asked for that.  Okay?

23    MS. TUCCI-JARRAF:  Thank you.

24    THE COURT:  That's the best I can do.

25    MS. TUCCI-JARRAF:  Thank you, Your Honor.

UNITED STATES DISTRICT COURT

1          THE COURT:  Uh-huh.

2          Mr. Lloyd?

3          MR. LLOYD:  Your Honor, may I address a housekeeping

4    issue?

5          THE COURT:  Well, it depends.  How housekeeping is it?

6          MR. LLOYD:  Very much so, I believe.  I'm sure the

7    defendant moves that the parties be allowed to retain the

8    pretrial services report given to the parties earlier during

9    this hearing or just before it.

10         THE COURT:  What about that, Probation?

11         Mr. Miller, start with you.

12         PROBATION OFFICER:  That would be your decision, Your

13   Honor, since the pretrial report is property of the Court.

14         THE COURT:  Okay.  Do you want to keep yours,

15   Ms. Davidson?

16         MS. DAVIDSON:  Yes, Your Honor.

17         THE COURT:  All right.  That will be fine, Mr. Lloyd.

18         MR. LLOYD:  Thank you, Your Honor.

19         MS. TUCCI-JARRAF:  Thank you.

20         THE COURT:  The pretrial services report for your

21   edification, Ms. Tucci-Jarraf, is the Court's.  So it's not for

22   public dissemination.  It's a privilege sometimes that I give

23   lawyers the right to retain it.  But I don't expect it to ever

24   be publicized.  It's my report that probation prepares for me.

25   I share with the lawyers so we all are operating off the same

                    UNITED STATES DISTRICT COURT

1    song sheet, so to speak, and that everybody has the same

2    information and that everybody can have their due process.

3    Okay?

4            MS. TUCCI-JARRAF:  I'll accept that and honor that and

5    won't publish it.

6            THE COURT:  All right.  So you've signed your name and

7    you've added all this stuff again.  "With full responsibility

8    and liability," what does that -- how is that different than

9    just signing your name?  What does that change?

10           MS. TUCCI-JARRAF:  Just an express -- that's the

11   signature I use so that if there's anything -- the without

12   prejudice, because there's three there.  With responsibility,

13   liability, and without prejudice, meaning if there's something

14   that's not in that contract that is applicable, but hasn't been

15   told to me, so a disclosure of material fact, then it's -- then

16   it can't prejudice me.  However, everything that you've stated

17   in there, I'm fully responsible and liable for agreeing to those

18   terms.

19           THE COURT:  Well, I don't really know what that means.

20   But I can't assure you that any of that will have any legal

21   significance just because you stuck it in there.

22           MS. TUCCI-JARRAF:  It's okay.

23           THE COURT:  Okay.  I just wanted you to know that.

24           MS. TUCCI-JARRAF:  I accept that.  It's your position.

25           THE COURT:  All right.  I will, though, approve with my

1   signature only your release.

2          Now, let's try to go quickly, because it's late.  I

3   have a full afternoon docket.

4          Mr. Lloyd, when you were ostensibly representing her or

5   possibly representing her, you filed a number of motions.  The

6   first was a motion for leave to have a court reporter and a

7   videographer.

8          We have provided a court reporter here today.

9   Videographer would be denied.  As I mentioned to the crowd

10  earlier, no video allowed in the courtroom.

11         Do you have anything further on that motion?

12         MR. LLOYD:  No, Your Honor.

13         THE COURT:  Second motion was a motion to correct the

14  minutes.  You said that at this hearing the defendant stated

15  hers was a special appearance and that she was presenting as

16  self.

17         I have no idea what that means.  That's legalese or

18  mumbo jumbo that means nothing.  She either was here as Heather

19  Ann Tucci-Jarraf or she's not.

20         What's that mean?

21         MR. LLOYD:  Your Honor, the defendant has adopted the

22  motions I necessarily filed --

23         THE COURT:  Yes.

24         MR. LLOYD:  -- because I alone had access --

25         THE COURT:  Okay.

                    UNITED STATES DISTRICT COURT

1      MR. LLOYD:  -- Sunday to the Court's filing system.  I

2  will, with the Court's leave, allow the defendant to speak to

3  that.

4      THE COURT:  All right.  What's wrong with the minutes

5  as they -- as they appear?  The minutes say, "The parties

6  appeared for initial appearance and arraignment."

7      Do you agree with that?

8      MS. TUCCI-JARRAF:  It was -- as far as -- no, I do not.

9  The actual record when he put in the minutes of the record, he

10  stated I -- that it was noted exactly as I had said, that I had

11  said that I was there by special appearance.

12      THE COURT:  You're not here by special appearance.

13      MS. TUCCI-JARRAF:  No.  But at that time he said that

14  it was being noted, and those are the exact words, so --

15      THE COURT:  Well, he may have noted it, but --

16      MS. TUCCI-JARRAF:  -- it's just a correction to the

17  minutes.

18      THE COURT:  Well, the minutes aren't a transcript.  It

19  says that you were present for an initial appearance and

20  arraignment.  Did you do an initial appearance and arraignment

21  on that date?

22      MS. TUCCI-JARRAF:  No.  I did an initial appearance.

23  However, we reserved -- we made a reserve -- reservation to

24  enter a plea of guilty or not guilty after the jurisdiction

25  matter had been resolved.

1          THE COURT:  So I saw that you put that in there, and I

2    checked with every person that was present, and they all said

3    that you entered a plea of not guilty and reserved the right to

4    contest jurisdiction.

5          MS. DAVIDSON:  Yes, Your Honor.  That is exactly what

6    happened.  I was here and --

7          THE COURT:  That's what the judge said, that's what the

8    law clerk said, that's what the --

9          MS. TUCCI-JARRAF:  If that is the case, I'm going to go

10   by the audio record on that, because I'd been up for 48 hours

11   and transferred from Georgia to here and then put into a

12   courtroom.  So --

13         THE COURT:  All right.  So for --

14         MS. TUCCI-JARRAF:  -- it is quite possible.

15         THE COURT:  -- for purposes of clarification, which

16   plea do you enter, guilty or not guilty?

17         MS. TUCCI-JARRAF:  Not guilty.

18         THE COURT:  All right.  So we'll make sure your plea is

19   noted at least as of today.

20         MS. TUCCI-JARRAF:  Thank you.

21         THE COURT:  It says you do not want appointed counsel

22   at that time and wish to represent yourself.

23         Is that true?

24         We covered that today already.

25         MS. TUCCI-JARRAF:  Well, yeah.  I think we've covered

1    that today.

2            THE COURT:  Okay.  Let's see.  Your other complaint was

3    you reserved whether to accept appointed counsel.  That's --

4    that's what you said at that hearing.  Right?

5            MS. TUCCI-JARRAF:  That was at that time, yes.

6            THE COURT:  All right.  We resolved the guilty plea

7    issue.  Okay.  Thank you.

8            So with regard to that motion, I'll basically deny it,

9    based on what we've covered here today.  The minutes speak for

10   themselves.

11           The next is the motion for a continuance and extension

12   of deadlines, Ms. Jarraf -- Ms. Tucci-Jarraf.  I apologize.  In

13   this case, it says that you first appeared here on August 24th

14   and trial is set in just over 30 days, October the 3rd.

15   Obviously, that's too quick for a trial, and you have every

16   right to ask for a continuance.  This motion does that.

17           This motion also asks to extend the pretrial deadlines.

18   For example, how much time you have to do a motion and --

19   because actually the motion deadline has technically run, but

20   we're going to give you some more time, don't worry, and to

21   prepare adequately for trial.  Is that correct?

22           MS. TUCCI-JARRAF:  Yes.  Does that also include the

23   discovery, because --

24           THE COURT:  Yes.

25           MS. TUCCI-JARRAF:  Okay.  So for discovery and all

                    UNITED STATES DISTRICT COURT

1    that, yes, I need some more time, Your Honor.

2            THE COURT:  Correct.  All right.  So let's talk about

3    scheduling.  Now, with regard to discovery, when can you get

4    that over to Ms. Jarraf -- Tucci-Jarraf?

5            MS. DAVIDSON:  Your Honor, seven days from this

6    hearing.

7            THE COURT:  All right.  And why don't we do this, why

8    don't you be the liaison, Mr. Lloyd, so it's easy, so that

9    there's no contact between Ms. Davidson and Ms. Tucci-Jarraf.

10   She'll get the discovery to you, you get it promptly to

11   Ms. Tucci-Jarraf.  Okay?

12           MR. LLOYD:  I will do, Your Honor.

13           THE COURT:  Okay.  Thank you.  Let's look at a new

14   trial date.  What are we looking at, Rachel?

15           THE COURTROOM DEPUTY:  How far out did you want to go?

16           THE COURT:  What are you thinking, Ms. Tucci-Jarraf?

17   How much time do you think you're going to need to get ready?

18           MS. TUCCI-JARRAF:  If I might just look at a calendar

19   real quick.

20           THE COURT:  Sure.

21           MS. TUCCI-JARRAF:  Okay.  Your Honor, with that -- to

22   give us enough time to try this matter properly and reasonably,

23   I would ask that the Court look for dates the 4th of December or

24   after.

25           THE COURT:  All right.  Any objection to that time

1  period?

2          MS. DAVIDSON:  Not to that.  Your Honor, my fall

3  calendar is very full.  I have a trial starting on November 28th

4  that is expected to go.  That should go about four days.

5          I think the earliest date that would fit in my calendar

6  would be December 12th or in the month of January.

7          THE COURT:  All right.  Let's see if we got something

8  the week of December 11th.

9          THE COURTROOM DEPUTY:  The 12th does appear to be open.

10          THE COURT:  December 12th is available.  Is that okay?

11          MS. TUCCI-JARRAF:  December 12th, Your Honor?

12          THE COURT:  Yes, ma'am.

13          MS. TUCCI-JARRAF:  Yes.

14          THE COURT:  All right.  December 12th is the trial

15  date.

16          The only problem that presents is if the motion on

17  jurisdiction is a motion to dismiss the indictment for lack of

18  jurisdiction, we're going to need basically 90 days -- up to 90

19  days from the hearing on that.  And the reason is that this

20  Court can't rule definitively on that issue.

21          In other words, I issue a ruling, but if you don't like

22  it or if the government doesn't like it, both of you get a

23  chance to object to the district judge, who will ultimately try

24  the case.

25          MS. DAVIDSON:  Your Honor, I would suggest a January

                    UNITED STATES DISTRICT COURT

1  date, just because of this Court's calendar -- I mean, she's

2  already notified us that she plans on filing a dispositive

3  motion, and it would be better for the United States' calendar

4  for it to be a January date.

5          THE COURT: Well, my point is, I don't want to give you

6  too short a time to file that motion.

7          MS. TUCCI-JARRAF: Right, right.

8          THE COURT: So if I give you enough time and then we

9  set the hearing, then you'll need that additional time for me to

10 rule.

11         MS. TUCCI-JARRAF: Okay.

12         THE COURT: Then if you like my ruling, they probably

13 won't, and if they like my ruling, you probably won't. So

14 invariably, when I rule on a dispositive motion, somebody

15 objects to it. Doesn't matter what it is. Because somebody

16 doesn't like the fact they lost. And then the district judge

17 will ultimately rule on that.

18         So I'm thinking, let's do it this way. How much time

19 do you think it will take you to get that motion filed? Can you

20 get it filed in the -- go ahead.

21         MS. TUCCI-JARRAF: I would state that it would take --

22 well, I wanted to be able to see what the prosecutor has -- she

23 said seven days from today she would be able to get that to me.

24         THE COURT: Right.

25         MS. TUCCI-JARRAF: I would like to -- I can start

1  preparing the motion, obviously, this week.  So I would say at

2  least two weeks to be able to file that motion over to -- with

3  the Court and to get it over to -- because I still have to

4  accommodate, get to my accommodations.

5         THE COURT:  How about if I give you the usual three

6  weeks and give you till -- a little bit longer --

7  September 29th?

8             MS. TUCCI-JARRAF:  Okay.

9         THE COURT:  That will give you all of September.

10             MS. TUCCI-JARRAF:  All right.

11         THE COURT:  And then responses will be due by October

12  the 13th.  And then I'm looking for a hearing -- motion hearing

13  date, let's see, October 18th or 19th.

14         Ms. Davidson, how are you on those two dates?

15         MS. DAVIDSON:  Your Honor, the 18th is better for me.

16         THE COURT:  Okay.  Morning or afternoon?

17         MS. DAVIDSON:  We should probably start this in the

18  morning.

19         THE COURT:  All right.  October 18th at 9:30.

20         Is that good for you, Ms. Tucci-Jarraf?

21         MS. TUCCI-JARRAF:  Yes, sir.

22         THE COURT:  Okay.  And then so we need to set a trial

23  date sometime around January the 18th.  So it won't be that much

24  longer.

25         What do we have in that time frame, Ms. Stone?

UNITED STATES DISTRICT COURT

1        Probably January 22nd, 3rd, or 4th -- 24th, somewhere
2   that week?
3        THE COURTROOM DEPUTY:  Uh-huh.  Looks like January 23rd
4   or 30th.
5        THE COURT:  January 23rd good for you, Ms. Davidson?
6        MS. DAVIDSON:  Yes, Your Honor.
7        THE COURT:  All right.  January 23rd, 2018,
8   Ms. Tucci-Jarraf, is going to be your trial date.
9        MS. TUCCI-JARRAF:  Okay.
10       THE COURT:  That will give us plenty of time to rule,
11  give you time or the government time to object, give the
12  district judge time to rule, and still give you time to prepare
13  for trial if it's going.  Okay?
14       MS. TUCCI-JARRAF:  Is there a specific time that that's
15  set for, or is that later that we set the --
16       THE COURT:  The motion hearing will be set at 9:30.
17  The trial will start at nine o'clock.
18       MS. TUCCI-JARRAF:  Nine o'clock.  Thank you.
19       THE COURT:  And there will probably be a pretrial
20  conference before then.
21       MS. TUCCI-JARRAF:  Your Honor --
22       THE COURT:  Yes.
23       MS. TUCCI-JARRAF:  -- you said it's nine o'clock start
24  date on January 23rd.  And I'm sure that I can probably get you
25  to modify any conditions, because it takes a half hour to get

1    here, and if I can't leave till eight in the morning.

2              THE COURT:  Oh, sure.  To come here, you can do that.

3              MS. TUCCI-JARRAF:  Okay.

4              THE COURT:  But if you leave at eight, you can easily

5    get here by nine.

6              MS. TUCCI-JARRAF:  I don't know.  I'll figure it out.

7    But I'll let you know.

8              THE COURT:  I mean, that's an hour.  Doesn't take an

9    hour to get here from Oak Ridge.  But if you need to leave

10   little early that day, that's fine.

11             MS. TUCCI-JARRAF:  Okay.

12             THE COURT:  We'll certainly -- I'll modify that from

13   the bench right now.  You can leave that day at 7:30.

14             MS. TUCCI-JARRAF:  Okay.  Thank you.

15             THE COURT:  Okay.  We're not trying to be difficult.

16   We're actually trying to be accommodating and at the same time

17   just have parameters, so I'm not -- I just know Judge Varlan

18   starts at nine, I'm pretty sure.

19             So -- all right.  We need a plea cutoff deadline.

20             How about sometime December 20th, 21st, something like

21   that?

22             MS. DAVIDSON:  Yes, Your Honor.  I would typically ask

23   for 30 days, and that is good with the United States.

24             THE COURT:  All right.  Well, the 23rd would be on a

25   Saturday, so I'm going to give her till December 21st.

UNITED STATES DISTRICT COURT

1    What that means is you have till December 21st to
2  accept any kind of plea that the government might offer you.
3  After that, we're going on to trial.  Okay?  That's not to say
4  you have to or that you ought to.  I'm just saying that's the
5  deadline, so...
6          MS. TUCCI-JARRAF:  I understand.
7          THE COURT:  What else?  Anything else?
8          MS. TUCCI-JARRAF:  Did you set a pretrial conference?
9  I'm sorry, because I missed that part.
10          THE COURT:  I'm not setting one at this time.  After
11  the motion hearings, there probably will be a pretrial
12  conference.  My guess is the district judge may want to do that.
13  I'm thinking Judge Reeves did her own on the last pro se
14  defendant case.  Judge Varlan may.  That's the only reason I'm
15  not setting it.  He may want me to do it.  If he does, I will do
16  it.
17          But, ordinarily, the lawyers know what we talk about at
18  a pretrial conference.  And usually we don't even have one.  We
19  just put down the standard order.  And Mr. Lloyd can show you
20  one of those.
21          But a lot of times when there's somebody representing
22  themselves, we want to be sure everybody is on the same page, so
23  that you're not thinking you're going to do X and it turns out
24  you can't do X, you're going to do Y.  So it helps to say, you
25  know, here's what the rules are and here's how you do it.  And

UNITED STATES DISTRICT COURT

1   make sure anything you want to do, you run by the judge and find

2   out if that's going to fly or not and just -- just little

3   things.

4          Like in this Court, for example, when you approach the

5   jury and you're talking, I have a little piece of white carpet

6   down there.  Can't cross over the white carpet.  Okay?  So

7   that's the end of how close you can get.  So just those little

8   details.  How to use the equipment, things like that.  How to

9   pick a jury, those kind of things.

10         Okay.  So those are the kind of things that we

11  generally cover with somebody pro se like yourself, who wouldn't

12  know that -- ordinarily how we operate here in this Court.

13         MS. TUCCI-JARRAF:  Thank you.

14         THE COURT:  But I'm not going to set it at this time.

15  Or do you think I need to?  Yeah.  If we're going to set one,

16  we'll set it at the motion hearing.  Between now and then, I'll

17  ask Judge Varlan probably what he prefers to do.  Okay?

18         All right.  Anything else we need to schedule that you

19  can think of?

20         Anything else, Rachel, that we need to schedule for the

21  order?

22         THE COURTROOM DEPUTY:  I don't think so.

23         THE COURT:  Ms. Davidson, anything else you want to

24  schedule?

25         MS. DAVIDSON:  No, Your Honor.  Thank you.

                  UNITED STATES DISTRICT COURT

1          THE COURT:  Ms. Tucci-Jarraf, anything you want to

2     schedule?

3          MS. TUCCI-JARRAF:  Nothing that I can think of at this

4     time, Your Honor.

5          THE COURT:  Okay.  So make sure you write down for sure

6     that your motion hearing is October 18th at 9:30.  That's the

7     next time I will see you, and when you're required by your

8     release order to be here.  All right?

9          MS. TUCCI-JARRAF:  I understand.

10          THE COURTROOM DEPUTY:  Any reciprocal discovery?  Does

11     that matter?

12          THE COURT:  Do what?

13          THE COURTROOM DEPUTY:  Sorry.  Reciprocal discovery, if

14     that matters.

15          THE COURT:  Yeah.  That's the same as the motion

16     hearing at this point.

17          Reciprocal discovery, if you can explain that to her,

18     Mr. Lloyd.

19          The government is going to give you their discovery in

20     seven days.  There's a provision in the rules that talks about

21     the defendant's discovery to the government, and it's called

22     reciprocal discovery.  And so your deadline won't be till the

23     motion hearing, October the 18th.  And you can read the rule

24     yourself and see what it obligates you to provide, if anything.

25          And Mr. Lloyd can advise you as to where that rule is

1  as well.  Okay?

2            MS. TUCCI-JARRAF:  Thank you.

3            THE COURT:  Yeah.  So when you file your motion for

4  jurisdiction, I would anticipate that at least part of your

5  argument will involve the voluminous UCC filings that have been

6  made both on your behalf and your codefendant's behalf.  You do

7  not need to refile them.  We have both sets.  We don't need a

8  third set or a fourth set.  You may reference them by any way

9  you want to, but, please, don't file that volume again.

10           Now, the only problem with that is, I actually struck

11  the filing before, didn't I?  Okay.  We actually let the

12  documents in.  Just you and Mr. Beane both had somebody file

13  something on your behalf alleging they were noting your

14  appearance.  Nobody can do that.  People just can't appear for

15  other people.  That's just not allowed.  So it's probably well

16  intended, but it's just not legal.

17           MS. TUCCI-JARRAF:  So just to be clear --

18           THE COURT:  Uh-huh.

19           MS. TUCCI-JARRAF:  -- the record still has the --

20           THE COURT:  All the UCC filings, yes.

21           MS. TUCCI-JARRAF:  -- the actual filings in my case.

22  Okay.

23           THE COURT:  And your trust documents and all such

24  things.

25           MS. TUCCI-JARRAF:  Thank you.

                    UNITED STATES DISTRICT COURT

1         THE COURT:  And you can feel free to reference them in

2  your motion.

3         MS. TUCCI-JARRAF:  Okay.

4         THE COURT:  And any brief that goes with your motion.

5         MS. TUCCI-JARRAF:  Okay.

6         THE COURT:  Okay?

7         MS. TUCCI-JARRAF:  Thank you.

8         THE COURT:  But you don't want to -- I'm just giving

9  you permission to not file the whole package again.

10         MS. TUCCI-JARRAF:  Understood.  Thank you.

11         THE COURT:  Anything else, Ms. Davidson?

12         MS. DAVIDSON:  No, Your Honor.

13         THE COURT:  Anything else, Ms. Tucci-Jarraf?

14         MS. TUCCI-JARRAF:  No, Your Honor.

15         THE COURT:  Mr. Lloyd?

16         MR. LLOYD:  Your Honor, will the Court direct the clerk

17  show me on the digital docket as standby or elbow counsel so

18  that I will continue to receive copies of what's filed?

19         THE COURT:  I would assume that's done as a matter of

20  course.

21         Is that correct, Ms. Stone?

22         THE COURTROOM DEPUTY:  I believe so, but I'll make

23  sure.

24         THE COURT:  We'll make sure it's done.

25         MR. LLOYD:  Thank you.

1    THE COURT:  We wouldn't you want to miss anything.

2    MR. LLOYD:  Wouldn't want to miss anything.

3    THE COURT:  All right.  There being nothing further,

4  let me commend the crowd out there, by the way.  I told

5  everybody you'd be fine, and you have been.  Thank you very

6  much.

7    And, Ms. Tucci-Jarraf, as soon as they can get you

8  released from the facility, they will.  Somebody will need to be

9  out there to pick you up, but I assume that somebody's already

10  made arrangements for that.

11    Good luck.

12    MS. TUCCI-JARRAF:  Thank you.

13    THE COURT:  And I shall see you on October 18th, and

14  we'll read your filings between now and then.  All right.

15    MS. TUCCI-JARRAF:  Thank you.

16    THE COURT:  All right.  Stand in recess until 2:30?

17    THE COURTROOM DEPUTY:  Yes.

18    THE COURT:  2:30.

19    THE COURTROOM DEPUTY:  All rise.  This honorable court

20  stands in recess.

21    (Proceedings adjourned at 12:50 p.m.)

22

23

24

25

UNITED STATES DISTRICT COURT

1                       **CERTIFICATE OF REPORTER**

2    STATE OF TENNESSEE

3    COUNTY OF KNOX

4              I, Rebekah M. Lockwood, RPR, CRR, do hereby certify

5    that I was authorized to and did stenographically report the

6    foregoing proceedings; and that the foregoing pages constitute a

7    true and complete computer-aided transcription of my original

8    stenographic notes to the best of my knowledge, skill, and

9    ability.

10        I further certify that I am not a relative, employee,

11   attorney, or counsel of any of the parties, nor am I a relative

12   or employee of any of the parties' attorney or counsel connected

13   with the action, nor am I financially interested in the action.

14        IN WITNESS WHEREOF, I have hereunto set my hand at

15   Knoxville, Knox County, Tennessee this 5th day of September,

16   2017.

17

18

19

20                   _____
                     REBEKAH M. LOCKWOOD, RPR, CRR
21                   Official Court Reporter
                     United States District Court
22                   Eastern District of Tennessee

23

24

25